DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated appeal comes to us from a summary judgment granted by the Wood County Court of Common Pleas, which determined that a darkened area in a home being shown by a real estate agent was an open and obvious hazard. Because we conclude that the trial court properly granted summary judgment, we affirm.
 {¶ 2} Appellant, Douglas W. Leonard, brought an action against appellee, Modene and Associates, Inc. ("Modene"), a real estate brokerage firm, for injuries he allegedly sustained while showing a house which was listed with appellee. Modene filed a motion for summary judgment, arguing that the "open and obvious" doctrine or the "step-in-the-dark" rule, obviated any duty it or the landowner allegedly had. Leonard opposed the motion, stating that Modene had a duty to warn invitees that a dark room which had no stairs was a latent hazard. The following facts were presented in deposition testimony.
 {¶ 3} Leonard, as a licensed real estate agent for DiSalle Real Estate Company, located a house in Bowling Green, Ohio, from an internet multi-listing, for a couple interested in purchasing rental property. Leonard telephoned Modene, operating under the name of "ReMax," to set up a showing time and to obtain the lock box number. He also printed a copy of the specific property information provided by the listing agency, from the computer internet website.
 {¶ 4} On August 19, 2003, Leonard picked up and drove his clients to the house at approximately 6:20 p.m. and entered by using the lock box key. The interior of the house was illuminated by natural light through the windows. At one point, Leonard said he tried to turn on kitchen lights, but surmised that the electric was not "on." He stated, however, that he had no trouble seeing in the kitchen and dining room. The clients were able to look at the house, including the second story.
 {¶ 5} While the clients went out to look at the garage, Leonard remained in the house to look for "a turn off for electricity." He walked down a hallway, off of which was a door leading to a darkened room. He stated that the end of the hallway was dark, and he looked for but could not find any light switch. Thinking that the door off the hallway led to a cellar, Leonard searched for a light switch while stepping onto what he thought would be cellar stairs. This area was, instead, an old, unlighted coal bin room which had no stairway, even though the "floor" was approximately six feet below the floor of the hall doorway level. Leonard fell into the open coal bin room and sustained injuries.
 {¶ 6} Regarding the light conditions in the hallway and what he observed before he fell, Leonard testified in deposition as follows:
 {¶ 7} "A. [Leonard] And [the clients] went out to look at the garage, and I went back out and down this hallway, and I went back to the end of the hallway, and there's no lighting back there, and I was looking for a light switch, and we had, you know, pictures here.
 {¶ 8} "Q. Go ahead.
 {¶ 9} "A. [Leonard] I stepped with my left foot down, and I came with my right foot and I fell. It was over six foot deep that I fell into. I was stunned. I was — you know, couldn't believe what happened. * * *
 {¶ 10} "* * *
 {¶ 11} "Q. What did you see when you looked to the right upon opening the door?
 {¶ 12} "A. [Leonard] A hallway going back.
 {¶ 13} "Q. And how was the lighting in the hallway?
 {¶ 14} "A. [Leonard] There was no lighting in the hallway, no lighting in the hallway.
 {¶ 15} "Q. And when you say no lighting in the hallway, was the hallway visible or was it completely dark?
 {¶ 16} "A. [Leonard] It was a little bit of light.
 {¶ 17} "Q. Where was the little bit of light?
 {¶ 18} "A. [Leonard] Coming from the north end coming in.
 {¶ 19} "Q. Okay. When you stood at the entrance to this hallway, how far could you see into the hallway?
 {¶ 20} "A. [Leonard] I could see, you know, back. I had light up here * * * you know, there's lighting, but you really couldn't see all the way back.
 {¶ 21} "Q. Okay.
 {¶ 22} "A. [Leonard] I was searching for a — something to turn the light on, looking for a light of some sort.
 {¶ 23} "Q. Where are you searching?
 {¶ 24} "A. [Leonard] The walls. Okay. The walls.
 {¶ 25} "* * *
 {¶ 26} "Q. Okay. What were you searching for, a light as in a light switch?
 {¶ 27} "A. [Leonard] Correct. Yes.
 {¶ 28} "* * *
 {¶ 29} "A. [Leonard] There's light in the hallway. It's not dark.
 {¶ 30} "MR. ZYCHOWICZ: It's not black.
 {¶ 31} "A. [Leonard] No, it's not black.
 {¶ 32} "* * *
 {¶ 33} "Q. * * * If you looked down, could you see what you were stepping on as you walked down the hallway?
 {¶ 34} "A. [Leonard] Not really, no.
 {¶ 35} "* * *
 {¶ 36} "A. [Leonard] Then you see this right here. You know, I wasn't looking down —
 {¶ 37} "Q. Okay.
 {¶ 38} "A. [Leonard] — for one thing. I was looking for light fixtures.
 {¶ 39} "Q. As you stepped, you were not looking down, we cut to the chase?
 {¶ 40} "A. [Leonard] Right. Yes.
 {¶ 41} "Q. As you stepped, you were stepping in the dark, correct?
 {¶ 42} "A. [Leonard] Yes, but I was feeling for light trying to find something to turn the light on so I can show this building — this here, this side of the — you know.
 {¶ 43} "Q. And as a result of you stepping in the dark, you fell into the cellar correct?
 {¶ 44} "A. [Leonard] Well, it wasn't dark as you're speaking."
 {¶ 45} Anthony Harp, a licensed independent real estate agent working for Modene, also testified in deposition. He stated that, although he had listed the home and had walked through it several times with potential buyers, he had never entered the room where Leonard fell. Harp stated that when he observed that the room was dark, he chose not to enter until he had a flashlight. He said that this caution was customary when showing any house, since one never knew what dangers might be lurking in the darkness, such as holes in the floor or spiders. Harp further explained that, from the outside structure, he presumed that the room was an old coal bin room. Prior to Leonard's fall, Harp stated that he had no actual knowledge of what was inside of the room or that the edge of the doorway dropped down without stairs. He said that the information provided on the website was provided by the seller and acknowledged that nothing on the sheet indicated that the room had no stairs.
 {¶ 46} John Modene, part owner of the brokerage firm, also testified in deposition. He explained that many times he listed a home without ever having been in it. He said that real estate agents customarily relied on the property owners to provide information about the house. He also stated that whenever an agent entered a house, prudence required caution, especially in dark areas, like crawl spaces and basements, which might contain unknown hazards.
 {¶ 47} The trial court ultimately granted summary judgment, as a matter of law, in favor of Modene. The court found that one of two factual possibilities existed, both unfavorable to Leonard's claim. Either there was enough light that if Leonard had looked he would have seen that the "open and obvious danger" of a room with no stairway, or, if the room was too dark to see that no stairway existed, then Leonard negligently stepped into the darkened area without regard for his own safety. Under either theory, the court ruled, Leonard had a duty to protect himself and Modene either had no duty or did not breach any duty to Leonard.
 {¶ 48} Leonard now appeals from that judgment, arguing the following sole assignment of error:
 {¶ 49} "The Court of Common Pleas of Wood County erred in granting appellees' motion for summary judgment where there existed a genuine issue of material fact concerning the lighting conditions at the time of appellant's injury."
 {¶ 50} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105. Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268. Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner,67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner, supra, at 340.
 Open and Obvious Doctrine {¶ 51} To establish a negligence claim, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and injury or damages proximately caused by the breach. Menifee v.Ohio Welding Prod., Inc., (1984), 15 Ohio St.3d 75, 77. Property owners or occupiers owe an invitee a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn invitees of "latent or hidden dangers." Armstrong v. Best BuyCo., Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 5.
 {¶ 52} Landowners or occupiers owe no duty, however, to warn or protect an invitee against dangers which are known to the invitee or those which are so "open and obvious" that he or she may reasonably be expected to discover them Id., at ¶ 13-14, citing to Sidle v. Humphrey (1968), 13 Ohio St.2d 45. See, also, Abbott v. Sears, Roebuck Co., 11th Dist. No. 2003-T-0085, 2004-Ohio-5106, at ¶ 19. The open and obvious doctrine applies generally to both private property invitees, as well as business invitees. See Armstrong, supra (store owner owed no duty to protect invitee from open and obvious guardrail);Zuzan v. Shutrump, 155 Ohio App.3d 589, 2003-Ohio-7285
(homeowner does not owe duty to protect invitee entering home to install carpeting against a danger that is open and obvious). Invitees are expected to recognize and protect themselves against open and obvious dangers. Simmers v. Bentley Constr. Co.
(1992), 64 Ohio St.3d 642, 644. Since a property owner or occupier owes no duty to an invitee where a hazard is open and obvious, it is unnecessary to consider the issues of breach, damages, and causation. Ward v. Wal-Mart Stores, Inc. (Dec. 28, 2001), 11th Dist. No. 2000-L-171, judgment affirmed by99 Ohio St.3d 210.
 {¶ 53} Moreover, a plaintiff need not have actually observed the dangerous condition for it to be an "open and obvious condition." Schmitt v. Duke Realty, LP, 10th Dist. No. 04AP-251, 2005-Ohio-4245, at ¶ 10; Brown v. Whirlpool Corp., 3d Dist. No. 9-04-12, 2004-Ohio-5101, at ¶ 14. The determining factor is whether the condition is or could have been seen, if the injured party had looked. Schmitt, supra. The existence and the obviousness of a danger which allegedly exists on a premises is determined by a fact-specific inquiry and must be analyzed on a case-by-case basis. Henry v. Dollar General Store, 2d Dist. No. 2002-CA-47, 2003-Ohio-206 at ¶ 16; Miller v. Beer BarrelSaloon (May 24, 1991), 6th Dist. No. 90-OT-050.
 Step-in-the-dark Rule {¶ 54} The "step-in-the dark" rule, as enunciated by Ohio courts, provides that one who intentionally steps from a lighted area into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is liable for his or her own injuries under contributory negligence as a matter of law. See Flury v. Central Publishing House (1928),118 Ohio St. 154; McKinley v. Niederst (1928),118 Ohio St. 334. "`Darkness' is always a warning of danger, and for one's own protection it may not be disregarded." Jeswald v. Hut (1968),15 Ohio St.2d 224, paragraph three of the syllabus.
 {¶ 55} The principles of comparative negligence have superseded the doctrine of contributory negligence as an absolute bar to recovery. Posin v. A.B.C. Motor Court Hotel, Inc.
(1976), 45 Ohio St.2d 271, 276. Nevertheless, the advent of comparative negligence does not necessarily preclude a grant of summary judgment. See Mitchell v. Ross (1984),14 Ohio App.3d 75. Thus, summary judgment may be granted to the defendant in a negligence suit where, "after construing the undisputed evidence most strongly in favor of plaintiff, a reasonable person could only conclude that the contributory negligence of the plaintiff was greater that the combined negligence" of the defendants.Miljikovic v. Greater Cleveland Regional Transit Auth. (Oct. 12, 2000), 8th Dist. No. 77214, citing to Mitchell, supra.
 {¶ 56} In the present case, the parties agree that Leonard was an invitee. Leonard acknowledged that he could not see into the darkened area and could not locate a light switch. Acting on what he presumed to be the entrance to a cellar with steps, he entered without looking, fell, and was injured. In this case, there were two hazards: the drop-off into the coal bin and the darkness. If, in fact, there was enough light to see, Leonard should have been able to observe that there were no steps, making the drop-off an open and obvious danger. If the room was too dark to see the drop-off, however, and Leonard entered the area without being able to see where he was stepping, then he also disregarded an open and obvious hazard — the darkness. Thus, even presuming a factual question was created by Leonard's testimony regarding the lighting conditions of the hallway and room, he cannot establish a negligence claim. Under either condition, Leonard, an experienced real estate agent, simply failed to exercise proper care and failed to protect himself from an observable, obvious hazard.
 {¶ 57} We also conclude that, even presuming that the "step-in-the-dark" rule applies, Leonard has no claim under comparative negligence. Harp, the listing agent, acknowledged that he declined to enter the darkened room because he could not see what hazards might be in the room. Nothing in the record indicates that he was aware of the drop-off within the room and failed to give notice of this potential hazard in the listing. Further, nothing in the law requires a real estate agency to warn invitees of open and obvious dangers on premises it has listed for sale. Consequently, although the absence of steps may have been unexpected, nothing in the record indicates that Modene attempted to hide this danger or had more knowledge of the hazard than Leonard. Therefore, we conclude that Modene had no duty to warn Leonard of the open, obvious, and observable danger of the darkened coal bin room or the drop-off, and the issue of comparative negligence is inapplicable.
 {¶ 58} Therefore, we conclude that the trial court properly granted summary judgment in favor of Modene. Accordingly, appellant's sole assignment of error is not well-taken.
 {¶ 59} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Singer, P.J. Skow, J. Parish, J. concur.