HISSONG, Appellant,

v.

MILLER et al., d.b.a. Z–Coil Pain Relief Footwear, Appellees.

[Cite as *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2009–CA–37.

Decided March 12, 2010.

Michael Weikle and Mark A. Gamin, for appellant.

Steven F. Stofel, for appellees.

---

BROGAN, Judge.

{¶ 1} Hissong appeals from the judgment of the Miami County Common Pleas Court in favor of Ron and Tina Miller, d.b.a. Z–Coil Pain Relief Footwear. The facts giving rise to the litigation are as follows.

### I

{¶ 2} In February 2008, Hissong visited Ron and Tina Miller's Piqua, Ohio, Z–Coil Pain Relief Footwear store. While there, Hissong asked the sales clerk if she could use the restroom. The clerk replied, "[O]f course," and directed Hissong "through the curtains to the left of the trellis in the back."[1] After the clerk pulled back the curtain, either Hissong or the clerk (it is not clear who) told Tim Miller, who was working in the back room, that she was going to use the restroom. Miller replied that that was "fine." Id. Hissong, who had never been

---

1. The Millers have filed a motion to strike Hissong's references to deposition testimony other than her own. Because our decision does not rely on testimony other than Hissong's, the issue raised in the motion need not be decided. The motion to strike will be overruled.

behind the curtain before, saw the trellis near the back on the left, and just before the trellis began, she saw the face of a closed door. Believing this was the restroom "to the left of the trellis," Hissong walked over to it. The door had a hook-and-eye latch on its upper-right side, which Hissong said she did not see. (Neither the Millers nor the clerk could say why the door was not latched at the time.) Also, affixed to the center of the door, about eye-level, was a small piece of paper on which was handwritten, "Notice, please keep this door locked." Hissong opened the door—which opened inwardly—about a foot and a half.[2] The other side was dark, but enough light from the backroom shone inside for Hissong to see a light switch on the right wall. As she reached for the switch, Hissong at the same time stepped through the doorway—never looking down. Had she looked down, she would have seen the steps that descended immediately on the other side of the door's threshold. As it was, expecting her foot to find the solid restroom floor and not finding it, Hissong bounced down the steps, severely injuring her shoulder on the way.

{¶ 3} In July 2008, Hissong filed a complaint against the Millers for negligence. She asserted that the abrupt and unexpected drop in floor elevation—in other words, the absence of a landing—was a hidden or latent danger that the Millers ought to have warned her about. The Millers filed a motion for summary judgment, arguing that they had no duty to warn Hissong of any damages that lurked in the darkness behind the basement door she entered. The trial court agreed and entered summary judgment for the Millers. Hissong has assigned three assignments of error in this appeal.

## II

{¶ 4} In each assignment of error, Hissong argues a different reason why the court's decision was erroneous. First, she argues that the court wrongly concluded that the stairs in the Millers' store were open and obvious. Second, Hissong argues in the alternative that even if the trial court were correct that the stairs were open and obvious, the court wrongly concluded that attendant circumstances did not excuse her failure to see them. And third, Hissong argues that the court wrongly concluded that the step-in-the-dark rule barred her claim.

{¶ 5} We will review the trial court's summary-judgment decision de novo. See *Cox v. Kettering Med. Ctr.*, Montgomery App. No. 20614, 2005-Ohio-5003, 2005 WL 2327124. To determine whether a trial court erred under de novo review, we apply the same legal standard it did (or should have) to the same facts, and we compare our conclusion to the court's. Here, the legal standard

---

2. The attorney taking Hissong's deposition described the distance as "about from your fingertips to your elbow."

comes from Civ.R. 56(C): Summary judgment on Hissong's negligence claim is appropriate if the Millers can show (1) that no genuine issue of material fact remains, (2) that they are entitled to judgment as a matter of law, and (3) that even when the evidence is construed most strongly in Hissong's favor, reasonable minds can conclude only adversely to her. We agree with the trial court that reasonable minds can conclude only that no attendant circumstances were present. But we agree with Hissong that reasonable minds can conclude differently on whether the stairs were open and obvious and whether she stepped into the darkness.

{¶ 6} Broadly speaking, before a plaintiff can recover from a defendant for negligence, she must prove that the defendants owed her a duty of care, that they breached the duty, and that the breach proximately caused her injury. See *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. Here, duty and cause are in focus. The overarching issue in the first and second assignments of error is whether the Millers had a duty of care to protect Hissong from the stairs. The issue in the third assignment of error assumes that the Millers had such a duty and asks whether Hissong bears any responsibility for her injuries because she stepped into a dark space. Reviewing the assignments of error out of order, we begin with the first, then move to the third, and end with the second.

### A shopkeeper owes his customers a duty of ordinary care

{¶ 7} Proving that the Millers had a duty to protect her from the stairs is key to Hissong's claim because without such a duty, the Millers are not legally liable for her injuries. See *Olivier v. Leaf & Vine*, Miami App. No. 2004 CA 35, 2005-Ohio-1910, 2005 WL 937928, at ¶ 21 ("The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability" [citation omitted]). Because the parties appear to agree that Hissong was a business invitee, the Millers owed her a duty of reasonable or ordinary care. See *Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51, 52, 7 O.O.3d 130, 372 N.E.2d 335, quoting Prosser on Torts (4th Ed. 1971) 392–393. This standard of care required the Millers to maintain their store "in a reasonably safe condition so that its customers [were] not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. But the standard did not require the Millers to be guarantors of their customers' safety. Id. ("A shopkeeper is not * * * an insurer of the customer's safety.") The Millers could meet this standard of care by inspecting their store for unknown dangers, by taking "reasonable precautions" to protect customers from foreseeable dangers, and by warning customers

of known latent or hidden dangers. *Perry* at 52, 7 O.O.3d 130, 372 N.E.2d 335, quoting Prosser on Torts, 392–393.

### Dangers that are open and obvious

{¶ 8} The Millers could expect that customers would protect themselves from dangers in their store that were open and obvious. The question of open-and-obvious dangers does not concern an affirmative defense, but rather concerns the threshold issue of whether a duty of care exists. *Armstrong v. Best Buy Co.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 13. Unlike hidden or latent dangers, a shopkeeper has no duty to warn customers away from dangers that are open and obvious. See *Armstrong* at syllabus. The reason for this rule lies in the idea that "the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504. So the shopkeeper may expect that a customer will discover such a danger and protect herself from it. Id.

{¶ 9} Here, the trial court concluded that the stairway was open and obvious as a matter of law. But Hissong, in her first assignment of error,[3] contends that reasonable minds can differ on this question. The Millers (apparently conceding that the stairway is dangerous) respond that if Hissong had simply looked down, as she should have done, she would have seen the steps and been able to prevent her fall.

{¶ 10} The question of whether a particular danger is open and obvious is answered objectively, without regard to the injured plaintiff. Accordingly, the open-and-obvious test "properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 13. Similarly, the plaintiff's subjective state of mind when she encountered the danger—for example, what she was aware of at the time—may not be considered. (Citation omitted.) *Weaver v. Booher Carpet & Rug,* Montgomery App. No. 19982, 2004-Ohio-658, 2004 WL 257671, at ¶ 9. So neither Hissong's actions when she encountered the stairs nor her mental state at the time of the encounter is material for this analysis. Id.

{¶ 11} What is material to the open-and-obvious test is whether the danger is observable, which means it "is discoverable or discernible by one who is acting with ordinary care under the circumstances." (Emphasis omitted.) *Earnsberger v. Griffiths Park Swim Club,* Summit App. No. 20882, 2002-Ohio-

---

**3.** "The trial court erred in granting summary judgment in favor of the defendants on the basis of Ohio's open and obvious rule where multiple issues of fact existed and where reasonable minds could conclude that the hazard was not open and obvious."

3739, 2002 WL 1626126, ¶ 24; see also *Springer v. Univ. of Dayton*, Montgomery App. No. 21358, 2006-Ohio-3198, 2006 WL 1717906, at ¶ 5 ("[T]he determinative issue is whether the condition is observable" [citation omitted]). From this test, we, and other courts, have inferred that "observable" does not mean that before being injured, the plaintiff must have actually seen the danger. *Springer* at ¶ 5 ("[T]he dangerous condition at issue does not actually have to be observed by the plaintiff in order for it to be an 'open and obvious' condition under the law"); see also *Leonard v. Modene & Assoc., Inc.*, Wood App. No. WD–05–085, 2006-Ohio-5471, 2006 WL 2988483, at ¶ 53.

{¶ 12} Rather, "the crucial inquiry is whether a customer exercising ordinary care under the circumstances would have seen and been able to guard him or herself against the condition." (Citation omitted.) *Olivier* at ¶ 31. It follows, then, that a plaintiff's failure to watch where she is walking is not necessarily dispositive of the open-and-obvious question. *Frano v. Red Robin Internatl., Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, 907 N.E.2d 796, at ¶ 21 (whether a plaintiff looked down "is not the determinative issue since 'the danger does not actually have to be observed by the plaintiff in order for it to be an open and obvious condition under the law.'" [Citation omitted.]) See also *Gingrich v. D'Ambrozio*, Trumbull App. No. 2008–T–0103, 2009-Ohio-2956, 2009 WL 1743930, at ¶ 27 ("A plaintiff's failure to look down does not remove a danger from the realm of an open and obvious hazard"). However, the question is answered, and the open-and-obvious nature of the danger is established, if the plaintiff admits that if she had looked down she would have seen the danger. *Gingrich* at ¶ 27, citing *Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 16 ("[W]hen a plaintiff acknowledges that he or she would have seen the danger had [he or she] looked down, the danger is open and obvious").

{¶ 13} Not surprisingly, whether a particular danger is open and obvious depends heavily on the particular facts of the case. While it is true that the question of whether a duty to warn exists is one of law for courts to answer, it is no less true that "[w]hether a given hazard is open-and-obvious * * * may involve a genuine issue of material fact, which a trier of fact must resolve." *Henry v. Dollar Gen. Store*, Green App. No. 2002–CA–47, 2003-Ohio-206, 2003 WL 139773, at ¶ 10. As one court aptly put it, " '[u]nder any given set of circumstances, how much attention a reasonably prudent person should direct to his or her surroundings is an extremely fact-specific analysis.'" *Sabitov v. Graines*, 177 Ohio App.3d 451, 894 N.E.2d 1310, 2008-Ohio-3795, at ¶ 20, quoting *Green v. China House* (1997), 123 Ohio App.3d 208, 211, 703 N.E.2d 872. For this reason, previously decided open-and-obvious cases tend to be of limited value. See *Kidder*, 2004-Ohio-4261, 2004 WL 1802050, at ¶ 11; see also *Leonard* at ¶ 53 ("The existence and the obviousness of a danger which allegedly exists on a

premises is determined by a fact-specific inquiry and must be analyzed on a case-by-case basis" [citation omitted]). Here, the question that must be answered for summary-judgment purposes is whether reasonable minds looking at the same evidence in the light most favorable to Hissong can conclude differently about whether the stairs were an open-and-obvious danger. See *Kidder*, 2004-Ohio-4261, 2004 WL 1802050, at ¶ 6. To answer this question, we must ask whether the stairs were objectively observable—that is, whether a person in Hissong's situation exercising reasonable care would have seen them.

{¶ 14} When Hissong reached the door to what she believed was the restroom, she opened it inward only about a foot and a half. She saw a light switch inside, and as she reached for the switch, she stepped through the doorway. Hissong admitted that she did not look down before stepping through the doorway. In her deposition, she explained why:

{¶ 15} "Q. Okay. And did you turn on the light switch before you took a step in?

{¶ 16} "A. No, I was walking in as I reached for it.

{¶ 17} "Q. And did you look down to see where you were walking?

{¶ 18} "A. No. I was going into the bathroom.

{¶ 19} "Q. So you didn't look down to see what you could see when you put your foot down?

{¶ 20} "A. Absolutely not. I never do when I go to the bathroom."

{¶ 21} The deposing attorney could not get Hissong to admit that if she had looked down, she would have seen the stairs:

{¶ 22} "Q. * * * Was the room lighted in any way when you opened the door?

{¶ 23} "A. Just from the light that was coming from the room I was walking from.

{¶ 24} "Q. Was that sufficient light to show you where the stairs were?

{¶ 25} "A. If I had seen the stairs?

{¶ 26} "Q. Yes.

{¶ 27} "A. Because I didn't see the stairs.

{¶ 28} "Q. Because you never looked down?

{¶ 29} "A. I never looked down.

{¶ 30} " * * *

{¶ 31} "A. I didn't see anything but the light switch.

{¶ 32} "Q. So no matter what I ask you you only saw the light switch?

{¶ 33} "A. That's what I was aiming for."

{¶ 34} Do most people look down before stepping inside a restroom? This question, we think, cannot be answered as a matter of law. On the one hand, one can reasonably think that people should always watch where they step, so one could conclude that by not looking down Hissong failed to exercise ordinary care to protect herself from a visible danger.

{¶ 35} On the other hand, one could also reasonably think that most people, like Hissong, simply do not look down when stepping into a restroom. One could think that a door, particularly one that opens inward like the door here, hides the danger. See *Allgauer v. Le Bastille, Inc.* (1981), 101 Ill.App.3d 978, 981–982, 57 Ill.Dec. 466, 428 N.E.2d 1146 (a jury could find a concealed danger in "[a] steep staircase without any landing or with one beginning before the end of the edge of the door when it is opened onto the stair" because "the danger was hidden by the door until it was opened and the fact that the stair could be seen for the split second plaintiff was placing her foot on it does not necessarily remove it from the realm of hidden dangers"). We think this question, especially, "invokes the jury's function: to find and apply the dictates of the community conscience in the matter.'" *McNally v. Liebowitz* (1982), 498 Pa. 163, 171, 445 A.2d 716, quoting 2 Harper & James, The Law of Torts (1956) Section 22.10.

{¶ 36} The first assignment of error is sustained.

### The step-in-the-dark rule

{¶ 37} Unlike the open-and-obvious doctrine, the step-in-the-dark rule is an affirmative defense. Also unlike that doctrine, the rule does not relate to the duty element of a negligence claim, but instead relates to the cause of the plaintiff's injury. Here, the trial court concluded that the rule vitiated any liability that the Millers might have to Hissong because she was contributorily negligent in stepping into the darkness behind the door. But Hissong, in her third assignment of error,[4] contends that she did not step into the darkness because she reasonably believed she was stepping into the restroom.

{¶ 38} "The step-in-the-dark rule * * * holds generally that one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law." (Citations omitted.) *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 276, 74 O.O.2d 427, 344 N.E.2d 334. This rule does not prove contributory negligence but simply "raises

---

4. "The trial court erred in granting summary judgment in favor of the defendants on the basis of Ohio's step-in-the-dark rule, where multiple issues of fact existed and reasonable minds could conclude that plaintiff had not stepped into the dark within the meaning of that rule."

an inference of the lack of prudence and ordinary care on the part of a plaintiff"—in other words, an inference that the plaintiff's own negligence, at least in part, caused her injury. Id. at paragraph one of the syllabus. However, the inference does not arise "[i]f conflicting evidence exists as to the intentional nature of the step into the dark, the lighting conditions and degree of darkness, the nature and appearance of the premises, or other circumstances exist tending to disprove a voluntary, deliberate step into unknown darkness." Id. at 276, 74 O.O.2d 427, 344 N.E.2d 334. The rationale behind the rule is grounded in the idea that " '[d]arkness is nature's own warning to arouse the natural instinct of self-preservation, the first law of nature.' " *Parker v. Vaughn* (Aug. 7, 1998), Montgomery App. No. 16939, 1998 WL 639305, quoting *Cent. Publishing House v. Flury* (1927), 25 Ohio App. 214, 227, 157 N.E. 794. Because darkness is a warning, "for one's own protection it may not be disregarded." *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37, at paragraph three of the syllabus. If one does unreasonably disregard the darkness, she may be precluded from recovering damages for resulting injuries. See id. at 227, 44 O.O.2d 196, 239 N.E.2d 37.

{¶ 39} But as the rule recognizes, in some situations, a person's step into the darkness is perfectly reasonable. As one court has explained, "[i]t cannot be said that a person is guilty of negligence as a matter of law under all circumstances when such person enters a dark place where his sense of sight alone does not enable him to see what is before him." *Chardon Lakes Inn Co. v. MacBride* (1937) 56 Ohio App. 40, 46, 9 O.O. 206, 10 N.E.2d 9. In some places, one expects to find darkness, so darkness is not always unusual and not always a warning of danger. A person does not act negligently by failing to look for danger where she has no reason to expect it or where she has reason *not* to expect it. For example, a person can be induced by another to enter darkness, having been instilled with a sense of safety in doing so. See 62A American Jurisprudence 2d (2009) Premises Liability, Section 761 ("The step in the dark rule, and similar rules which find the plaintiff to be negligent as a matter of law, are inapplicable * * * where the circumstances were such that an ordinary prudent person might be lulled into a false sense of safety"). This is particularly true when one is following the directions of another. See id. at Section 759 ("Conduct which would otherwise constitute negligence as a matter of law does not bar a plaintiff's recovery where such conduct is done at the direction of, or in accordance with instructions from, the defendant or the defendant's agent"). Indeed, "[i]n holding that a person who walked in the dark has not been negligent, the courts often rely in part on the fact that such individual correctly followed instructions regarding how to proceed." Id. at Section 759.

{¶ 40} Unlike the open-and-obvious test, the step-in-the-dark test does consider the plaintiff. Whether a particular plaintiff stepped into the dark depends on whether, when stepping into the darkness, the plaintiff was exercising ordinary care. For example, the plaintiff in *Flury v. Cent. Publishing House of Reformed Church in the United States* (1928), 118 Ohio St. 154, 160 N.E. 679, did not exercise ordinary care. The plaintiff slid open elevator doors and stepped inside (and fell) without thought or hesitation, without investigation, information, or knowledge of what was lurking in the darkness. He did so even though several of the defendant's employees were lunching nearby, any one of whom could have helped him, but the plaintiff did not ask any of them. This failure to ask, said the court, raised an inference of the lack of ordinary care.

{¶ 41} Conversely, the plaintiff in *MacBride* did exercise ordinary care by asking and then following directions. The plaintiff had asked the hostess at the defendant's inn for a ladies' restroom. The hostess's directions led the plaintiff to the rear of a hallway where there was the door to the ladies' restroom and, immediately to the right of that door, another door, behind which, unbeknownst to the plaintiff, were stairs that descended to the cellar. The plaintiff apparently (the court's recitation of the facts is somewhat unclear) tried to open the restroom door and found it locked. Thinking she had made a mistake, she turned to the door on the right and opened it. After the plaintiff stepped inside and onto an unseen landing, because the light at the end of the hall was quite dim, she began searching for a light switch. She eventually stepped off the landing, lost her balance, and bounced down the unseen stairs. Reversing the trial court's grant of summary judgment to the defendant, the court distinguished *Flury* based on that plaintiff's failure to make any investigation. In contrast, said the court, the plaintiff here acted in accordance with the directions of one in charge of the premises. The plaintiff, said the court, "might reasonably rely upon the belief that she would not be directed into a place of danger by the person in charge of the inn." *MacBride*, 56 Ohio App. at 44, 9 O.O. 206, 10 N.E.2d 9.

{¶ 42} Here, the analytical question is whether Hissong unreasonably stepped into the darkness behind the door. The analysis subjectively asks whether Hissong acted negligently in her encounter with the darkness. The question for summary-judgment purposes, then, is whether reasonable minds can answer this question differently.

{¶ 43} The facts show that a sales clerk allowed Hissong to use a restroom in the back room of the Millers' store, an area where customers are generally not permitted and where Hissong had never been. Directing her to the restroom, "[the clerk] told [Hissong] to turn left at the trellis and the door was right there." Photographs in the record suggest what went wrong. A color photograph of the back room, which is what we assume Hissong saw when she walked through the

curtain, shows the face of a door a little ways back on the left, extending out perpendicular to the left wall. In this picture, only that one door is visible, which is the door Hissong saw and believed opened into the restroom. At roughly the width of the door, the wall turns sharply and runs perpendicular to the door toward the back of the room. Along this wall rests the trellis. A different photograph, taken closer to the trellis, reveals on the trellis's far end another door, in the same wall along which the trellis rests and partially obscured by it. This, presumably, is the door to the restroom. It seems, then, that the clerk intended for Hissong to turn left *after* the trellis, but Hissong, seeing only the one door, turned left *before* it.

{¶ 44} In support of its decision to grant summary judgment, the trial court cited *Leonard v. Modene & Assoc., Inc.,* Wood App. No. WD–05–085, 2006-Ohio-5471, 2006 WL 2988483, wherein the court of appeals affirmed the trial court's grant of summary judgment to the defendants where a realtor showing a house stepped into a darkened room that was an old, unlighted coal-bin room that had no stairway. The big distinction in *Leonard* and the facts before us was that Leonard had no idea what was behind the closed door. In this case, the appellant was led to believe the room she would be entering was a bathroom.

{¶ 45} Whether Hissong was negligent is also a question that cannot be answered as a matter of law. On the one hand, after Hissong opened the door and saw the darkness of the other side, one can reasonably think that Hissong should have been wary and looked down before she stepped inside. But on the other hand, one can also reasonably think that despite the notice on the door, in light of the directions given by the sales clerk, and considering the back room's configuration, Hissong did exercise ordinary care, even though she did not look down, because she was following directions. See *Tetrault v. Ghibellini* (1944), 316 Mass. 477, 480, 55 N.E.2d 956 ("The jury could find that [plaintiff] reasonably might have expected that the rest room would not be lighted, that, when injured, he was still proceeding reasonably as directed, and that it was not negligent to walk three steps in darkness" when, following directions, plaintiff entered a dark room, took a few steps, and fell into an unseen grease pit). After construing the evidence and all reasonable inferences most strongly in Hissong's favor, we think that reasonable minds can reach different conclusions about whether Hissong stepped into the dark, and therefore, whether the step-in-the-dark rule bars her recovery. See *Atwater v. J.C. Castlebury* (1987), 84 N.C.App. 512, 353 S.E.2d 263 (whether plaintiff negligently "stepped into the dark" could not be determined as a matter of law when plaintiff stepped through a door into a dimly lighted building from a sunny outside and fell because the interior floor of the building was eight inches lower than the door's threshold, and plaintiff had never before

entered the building, had no notice, and could not anticipate the lack of continuity between the threshold and the interior floor).

{¶ 46} The third assignment of error is sustained.

### No attendant circumstances were present

{¶ 47} "As a corollary to the open-and-obvious doctrine, we have recognized that there may be attendant circumstances [that] divert the individual's attention from [a] hazard and excuse her failure to observe it." (Citation omitted.) *Olivier*, 2005-Ohio-1910, 2005 WL 937928, at ¶ 22. Hissong, in her second assignment of error,[5] contends that attendant circumstances excuse her failure to see the steps. The trial court said that there were no attendant circumstances that distracted Hissong, and we agree.

{¶ 48} Circumstances that are attendant "would come to the attention of the reasonable [person] * * * and reduce the degree of care that an ordinary person would exercise." *Huey v. Neal*, 152 Ohio App.3d 146, 2003-Ohio-391, 787 N.E.2d 23, at ¶ 13. The attendant circumstances here, Hissong suggests, relate to the fact that the cellar door, normally latched with the hook-and-eye latch for safety reasons, was not latched when she opened it. But Hissong said in her deposition that she did not see the latch: how was she distracted by it?

{¶ 49} The second assignment of error is overruled.

### IV

{¶ 50} Overruling the second assignment of error but sustaining the first and third assignments of error, the trial court's order granting the Millers' summary judgment is reversed. This case is remanded for further proceedings.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and FROELICH, J., concur.

---

5. "The trial court erred in granting summary judgment in favor of defendants on the basis of Ohio's open and obvious rule where attendant circumstances were present, thus obviating the rule."