[Cite as *Goodman v. McDonald's Corp.*, 2019-Ohio-2216.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DWIGHT GOODMAN,                          :

    Plaintiff-Appellant,              :

                                     No. 107268

    v.                                :

McDONALD'S CORPORATION, ET AL.,          :

    Defendants-Appellees.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-875904

---

### *Appearances:*

Shapero & Green, L.L.C., Michael I. Shapero, Sean Burke,
Brian J. Green, and James A. Marx, *for appellant.*

Jay S. Hanson, *for appellees.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Dwight Goodman ("Goodman") appeals from a judgment of the trial court granting summary judgment in favor of JN House Enterprises, Inc. ("JN House"). After a careful review of the record and applicable law, we affirm the trial court's judgment.

{¶ 2} In the early morning of September 2, 2016, Goodman went inside a McDonald's restaurant operated by JN House located at Miles Road in Bedford Heights. He purchased a cup of coffee, and on his way out, he slipped and fell on the sidewalk just outside the restaurant. The sidewalk had been scrubbed and cleaned by an employee earlier that morning.

{¶ 3} On February 14, 2017, Goodman filed a lawsuit against JN House, alleging he was injured due to a negligently maintained sidewalk. Based on the deposition testimony of Goodman and the restaurant's employees, JN House moved for summary judgment, asserting that the open-and-obvious doctrine barred Goodman's negligence claim and that there were caution signs in the area.

{¶ 4} Goodman opposed JN House's motion for summary judgment, alleging that an employee of the restaurant had been cleaning the sidewalk with a mixture of water and a degreasing agent, which created a hazardous condition, and there were no warning signs placed on the area when he fell.

### Plaintiff's Deposition Testimony

{¶ 5} In his deposition, Goodman testified he entered the McDonald's to purchase coffee around 8:00 a.m. As he testified, when he entered the restaurant, there were no wet floor signs on the sidewalk or in the vestibule area of the restaurant. He testified that, when he entered the store, he "might have slipped a little bit but [he] didn't really pay it [any] attention." After he ordered a cup of coffee, he exited the restaurant the same way he entered it, but slipped and fell on the sidewalk outside the vestibule area. He fell toward his left and caught himself with

his left arm. He went back to the restaurant to tell the restaurant's manager, Robert Medina ("Medina"), that he fell. After he filled out an incident report, he went to work. He went to an urgent care later that same day because his back hurt from the slip and fall and required medical treatment.

{¶ 6} Goodman testified there was an independent witness to the incident: a man inside the restaurant saw him fall. The man provided Goodman and Medina his contact information. Both Goodman and Medina admit they later lost the information.

**Employees' Deposition Testimony**

{¶ 7} Medina talked to Goodman after the incident. He stated Goodman reported the incident around 6:50 a.m., although Goodman himself stated he was at the restaurant around 8:00 a.m. Medina acknowledged an employee, Dorothy Stevens, scrubbed the restaurant's sidewalks with a mixture of water and a degreasing agent earlier that morning.

{¶ 8} Medina gave his account of the incident, testifying as follows:

A: He [Goodman] came in and he told me that he slipped on the rug at first and that he wanted to fill out an incident report. And as I was walking back to the back to get a piece of paper and a pen he told the other manager, Linda, that was there, that he fell on the sidewalk.

And then when I came back up front he took me out and showed me what he claimed was an oily rug in the vestibule. And I told him it wasn't oil, it was just wet, that we had scrubbed the sidewalks that morning. And he told me, no, that's oily.

Q. So when you went out to the vestibule — first you go out to the vestibule area, correct?

A. Yes.

Q. And you're telling me Mr. Goodman told you at first he slipped on the rug in the vestibule?

A. Yes.

Q. And that he believed it was greasy, correct?

A. Yes.

Q. And you took exception to that, I believe?

A. Yes.

Q. And what did you think was on the rug, if anything?

A. Water. Because, like I said, we had scrubbed the sidewalk probably a half hour before that.

* * *

Q. So where then did Mr. Goodman say that he actually fell?

A. Outside.

{¶ 9} Medina also testified that the sidewalks would be washed and degreased every morning between 5 a.m. and 6 a.m., right after the restaurant opened. The vestibule would be cleaned as needed. On the morning of the incident, the vestibule was not cleaned. He also explained that after the sidewalks were cleaned, the rug in the vestibule would be wet from absorbing the water from the sidewalk cleaning due to the foot traffic in and out of the restaurant.

{¶ 10} Medina testified after he reported the incident to the restaurant's owner, he was instructed to take photographs of the exit area. Two photographs, which Medina testified he took around 7:15 a.m. that morning, were submitted as exhibits. One photograph showed there was a caution sign inside the vestibule and another caution sign outside the vestibule on the sidewalk. The other photograph

was a close-up of the sidewalk showing the condition of its surface and the location of the caution sign. Medina acknowledged the sidewalk appeared "still a little damp" from the cleaning earlier. He also testified the signs had been placed by Dorothy Stevens, the employee who had scrubbed the sidewalks earlier that morning.

{¶ 11} Stevens testified in her deposition describing how she cleaned the three sidewalks outside the restaurant every morning: she used a mixture of water and degreasing solution to scrub the sidewalk and then rinsed the ground with a bucket of warm water; after rinsing, she used a broom to brush off the excess water. Stevens testified she finished cleaning the sidewalks in the morning of the incident around 5:30 a.m. Regarding the warning signs, she testified she would place the warning signs in the area before she started the cleaning and, after cleaning, she would leave the warning signs up until the sidewalk dried, which would be an hour or an hour and one-half, depending whether the sun was out. One of the two photographs submitted showed the sun was out that morning, which confirmed Goodman's own testimony that it was a sunny day. Stevens testified that on a sunny day the sidewalks would have taken only half an hour or 45 minutes to dry. Stevens acknowledged the sidewalk was still a bit wet in the photograph.

**The Trial Court's Judgment and Assignments of Error**

{¶ 12} In its judgment granting summary judgment in favor of JN House, the trial court stated the following:

> Here, the court finds that the conditions in plaintiff's case were not only capable of being observed, given that it was a sunny day and there were caution signs visible, but plaintiff also testified that he

personally observed these conditions on his way in by saying that he "slipped a little" as he entered the restaurant through the same door he existed. However, even assuming arguendo that the conditions at the restaurant were not open and obvious, and defendant did owe plaintiff a duty to warn of latent or concealed dangers, the court further finds that defendant fulfilled that duty by placing two yellow caution signs in the wet floor area of the restaurant.

{¶ 13} On appeal, Goodman raises three assignments of error for our review:

I. The trial court erred in granting summary judgment to JN House because it erroneously disregarded Goodman's deposition testimony that there were no warning signs present before or at the time of his fall and erroneously accepted as true the testimony of JN House's witnesses that warning signs were present and consequently failed to construe the evidence and any reasonable inferences to be drawn therefrom most strongly in Goodman's favor as required by the standard of review and civil rules.

II. The trial court erred in finding as a matter of law that the hazard was open and obvious and that JN House had warned plaintiff of any hazard by virtue of having placed warning signs.

III. The trial court also erred in applying the open-and-obvious doctrine because the hazard which caused Goodman's fall was not a latent hazard, but rather a hazard which JN House's employees had actively and negligently created.

{¶ 14} Because the three assignments of error are interrelated, we address them together for ease of discussion.

**Summary Judgment Standard**

{¶ 15} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary

judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 16} Civ.R. 56(C) states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 17} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., that affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Id.* Once the moving party meets its initial burden, the nonmovant bears a reciprocal burden to produce competent evidence of the types listed in Civ.R. 56(C) showing that there is a genuine issue for trial. Civ.R. 56(E).

{¶ 18} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

**Duty to a Business Invitee**

{¶ 19} Here, Goodman raised a claim of negligence against JN House. To prevail on a negligence claim, one seeking recovery must show "the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981).

{¶ 20} Goodman was a business invitee, i.e., "one who enters another's land by invitation for a purpose that is beneficial to the owner." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). As such, JN House owed him "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985).

**Open and Obvious**

{¶ 21} "A shopkeeper is not, however, an insurer of the customer's safety. Further, a shopkeeper is under no duty to protect business invitees from dangers 'which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.'" *Id.* 203-204, quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. A business owner does not owe invitees a duty to warn of dangers that are open and obvious. *Armstrong v. Best Buy Co.* Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. The idea behind the open-and-obvious doctrine is that, because of the open-and-obvious nature of the hazard,

business owners may reasonably expect their invitees to discover the hazard and take appropriate measures to protect themselves. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶ 22} The open-and-obvious doctrine goes to the business owner's duty, the threshold issue of a negligence claim. *Armstrong* at ¶ 13. The open-and-obvious doctrine obviates any duty to warn of an obvious hazard and bars negligence claims for injuries related to the hazard. *Hammond v. Cleveland*, 8th Dist. Cuyahoga No. 97174, 2012-Ohio-494, ¶ 11, citing *Armstrong*.

{¶ 23} When applying the open-and-obvious doctrine, we also note that the dangerous condition at issue does not actually have to be observed by the plaintiff in order for it to be an open-and-obvious condition under the law; rather, the determinative issue is whether the condition is observable. *O'Brien v. Cleveland Dept. of Port Control*, 8th Dist. Cuyahoga No. 95417, 2011-Ohio-1695, ¶ 17. In other words, we are to look objectively at whether a particular danger is open and obvious, without regard to the injured plaintiff. *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, ¶ 10 (2d Dist.). The open-and-obvious doctrine "properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong* at ¶ 13.

{¶ 24} "Whether the open-and-obvious nature of a hazard presents a question of law for the court or a question of fact for the jury will depend largely on the facts of each particular case." *Rawlings v. Springwood Apts. of Columbus, Ltd.*, 10th Dist. Franklin No. 18AP-359, 2018-Ohio-4845, ¶ 27. In addition, whether a

hazard is open and obvious involves a fact-intensive inquiry, and therefore, comparing the facts of a given case with other cases is of limited value. *Kidder v. Kroger Co.*, 2d Dist. Montgomery No. 20405, 2004-Ohio-4261, ¶ 11.

**Analysis**

{¶ 25} Here, the question is whether the sidewalk, slightly damp from being scrubbed and cleaned earlier on a sunny day was a hazard and, if it was, would be so obvious and apparent to Goodman that he may reasonably be expected to discover the condition and protect himself against the condition. *Paschal*, 18 Ohio St.3d 203, 480 N.E.2d 474.

{¶ 26} First, we note that while there was testimony from the restaurant employees that the sidewalk was still slightly damp from being cleaned earlier, Goodman did not provide testimony describing the nature of the hazard on the sidewalk that caused him to slip — whether it was standing water, grease, residual cleaning agent, or whatever it was that caused him to slip. It appears the only testimony for his claim that the sidewalk was negligently maintained was that he slipped.

{¶ 27} "To establish negligence in a slip and fall case, it is incumbent upon the plaintiff to identify or explain the reason for the fall." *Bragg v. GFS Marketplace, L.L.C.*, 2018-Ohio-3781, 109 N.E.3d 1277, ¶ 38 (5th Dist.), citing *Stamper v. Middletown Hosp. Assn.*, 65 Ohio App.3d 65, 67-68, 582 N.E.2d 1040, 1042 (12th Dist.1989). "Where the plaintiff, either personally or by outside witnesses, cannot identify what caused the fall, a finding of negligence on the part of the defendant is

precluded." *Id.* "It continues to be the plaintiff's burden of proof to show that the condition claimed as the triggering event was unreasonably dangerous, and it is not the landowner's burden to show that the premises were in a reasonably safe condition." *Bond v. Mathias*, 11th Dist. Trumbull No. 94-T-5081, 1995 Ohio App. LEXIS 979, 11 (Mar. 17, 1995), citing *Baldauf v. Kent State Univ.*, 49 Ohio App 3d 46, 550 N.E.2d 517 (1988). Here, while the sidewalk was damp from having been being cleaned earlier that morning, there was no testimony or evidence presented by Goodman regarding the nature of the allegedly unreasonably dangerous condition giving rise to a duty to warn.

{¶ 28} Second, even if a sidewalk that had been cleaned constituted a hazardous condition, Goodman failed to create an issue for trial regarding whether the hazard was open and obvious. Goodman himself testified it was a sunny day and it was light at the time of the incident. There was nothing that blocked his view of the sidewalk before he stepped on it. In fact, Goodman's own testimony shows that he had traversed on the same path when he entered the restaurant and "might have slipped a little bit" on that occasion, yet he apparently did not look to see if there was anything potentially hazardous. The open-and-obvious doctrine concerns an objective standard regarding whether a hazard is observable and Goodman's own testimony reflects he appeared to have had a chance to observe and appreciate the condition of the sidewalk's surface. A business owner may reasonably expect their invitees to discover an open hazard and take appropriate measures to protect themselves. *Simmers*, 64 Ohio St.3d at 644, 597 N.E.2d 504. If there was anything

hazardous on the sidewalk, Goodman's own testimony shows he had been alerted to it and the business may reasonably expect him to take appropriate measures to protect himself.

{¶ 29} Considering the evidence in favor of Goodman and accepting his testimony as true, we are compelled to conclude the evidence did not create a genuine issue of material fact regarding JN House's duty to Goodman under the open-and-obvious doctrine. The trial court properly granted summary judgment in favor of JN House.[1]

**Warning Signs**

{¶ 30} Goodman testified there were no warning signs present where he slipped. JN House's employees testified there were two caution signs present, and the testimony was accompanied by two photographs. However, in Medina's incident report, there was no mention that there were warning signs present where Goodman fell. The trial court determined that Goodman's self-serving deposition testimony failed to create a genuine issue of material fact. Goodman argues on appeal that a

---

[1] Goodman cites *Simmons v. Am. Pacific Ents., L.L.C.*, 164 Ohio App.3d 763, 2005-Ohio-6957, 843 N.E.2d 1271, ¶ 23 (10th Dist.), for the proposition that the open-and-obvious doctrine only applies to static conditions, but not to negligent activities conducted on the premises. He claims the cleaning of the sidewalk constituted an active negligence precluding the application of the open-and-obvious doctrine. *Simmons* is not applicable. "[S]tatic conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden dangers, while * * * active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises." *Id.* at ¶ 20. Goodman's complaint alleged he slipped and fell on the "negligently maintained premises." By his own complaint, Goodman asserted JN House failed to maintain the premises in a reasonably safe condition. It is a negligence complaint involving a static condition as the term is defined.

genuine issue of material fact existed regarding the warning signs because JN House's employees' testimony was no less self-serving and the purportedly corroborating photographs could have been fabricated.

{¶ 31} Whether a warning sign is present, while relevant to the issue of a breach of duty, is irrelevant to the threshold issue of whether a duty exists in the first instance. *See e.g.*, *Horner v. Jiffy Lube Internatl., Inc.*, 10th Dist. Franklin No. 01AP-1054, 2002-Ohio-2880, ¶ 18 (rejecting evidence regarding breach of duty because if a condition is open and obvious, whether the plaintiff can prove the other elements of negligence is superfluous); *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 16 (the evidence regarding the presence or absence of warning signs is irrelevant to the determination of whether a hazard is open and obvious); and *Trowbridge v. Franciscan Univ. of Steubenville*, 7th Dist. Jefferson No. 12 JE 33, 2013-Ohio-5770, ¶ 37 ("the presence or absence of wet floor signs was not determinative in assessing an open and obvious condition, because 'it is the nature of the condition that is presumed to warn the invitee of its danger,' rather than warnings about the danger").

{¶ 32} Our review of the record reveals that Goodman failed to provide testimony regarding the nature of the allegedly unreasonably dangerous condition giving rise to a duty to warn. We also have determined that, even if the condition of the sidewalk was hazardous, it was an open-and-obvious hazard, as the trial court found. As such, we do not reach the question of whether there is an issue of material fact regarding whether warning signs were present where Goodman fell.

{¶ 33} For the foregoing reasons, we find the assignments of error presented by Goodman to be without merit and affirm the trial court's judgment in favor of JN House.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

MARY EILEEN KILBANE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR