OPINION
{¶ 1} Plaintiff-appellant, Charles Dan Freiburger, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Four Seasons Golf Center, LLC ("Four Seasons") and City of Whitehall ("Whitehall"). Because a genuine issue of material fact exists whether a reasonable person could readily appreciate the danger of falling to the ground from a *Page 2 
second-story driving range deck when a 40-inch-wide safety net extended beyond the deck's ledge, the trial court improperly granted summary judgment in favor of defendants.
 {¶ 2} The facts in this case are undisputed. Four Seasons operates a golf practice facility under a lease agreement with Whitehall. The facility runs both indoor and outdoor driving ranges. The indoor driving range consists of a two-tier hitting area; the first tier is at ground level and the second tier is approximately 14 feet above the first. Twenty-four tee stations line each deck, and each station has an artificial turf tee mat that measures five feet long by five feet wide by one to two inches thick. The mats on the upper deck are located one to two feet from the deck's ledge. A four-inch-wide red stripe spans the concrete floor 22 to 23 inches from the second-story ledge, and a six-inch wide yellow stripe parallels the red stripe approximately 100 inches back from the ledge. The yellow line is intended to separate the actively practicing golfers from spectators. A "ropelike apparatus" or netting extends approximately 40 inches past the edge of the upper deck and acts as a "safety system" for those who may fall off the front ledge of the upper deck. (Ashley Depo. 22-24.)
 {¶ 3} On February 7, 2003, plaintiff and his two friends went to Four Seasons to hit a bucket of golf balls at the facility's indoor driving range. After finding the driving range's ground floor tee stations full, the three went to the second story to find an open one. Plaintiff was in the process of hitting golf balls when plaintiff's friend, Christy Miller, called his name and approached him from behind. Plaintiff turned to her, with his back to the ledge, and began introducing her to his two friends who then joined plaintiff in the middle of the tee mat. As Miller stepped forward to exchange pleasantries with plaintiff's friends, plaintiff took a step back to help let her through the crowded tee station. Plaintiff's *Page 3 
left foot caught the edge of the tee mat, he stumbled, and he fell off the ledge. The safety net did not catch plaintiff and, as a result, he allegedly suffered serious injuries.
 {¶ 4} Plaintiff subsequently filed a complaint against defendants alleging Four Seasons breached the duty of care it owed to plaintiff by failing to (1) warn plaintiff that the safety netting was insufficient to catch him if he were to fall from the second tier, and (2) maintain the safety netting in a reasonably safe condition. Plaintiff alleged Whitehall was liable for Four Seasons' negligence (1) by way of its contractual relationship with Four Seasons, and (2) independently for failing to inspect and warn plaintiff of the inherently dangerous condition of the premises.
 {¶ 5} After discovery, Four Seasons and Whitehall moved for summary judgment, contending the second tier ledge was an open-and-obvious condition for which they owed no duty to plaintiff. Whitehall added that as a landlord not in possession of the premises, it owed no duty to plaintiff. Plaintiff opposed defendants' motions by arguing (1) attendant circumstances created an exception to the open-and-obvious doctrine; (2) Four Seasons breached its voluntarily-assumed duty to protect the safety of its patrons with a safety net; and (3) Four Seasons was strictly liable as the supplier of the deficient safety net.
 {¶ 6} The trial court granted summary judgment in favor of defendants because it found the golf center's second-story ledge was an open-and-obvious danger as a matter of law, leaving defendants with no duty to protect plaintiff from the hazard. As the basis for its decision, the court noted that plaintiff observed the ledge before he fell and acknowledged the possibility he could fall off it. Citing this court's decision in Anderson v. Ruoff (1995), 100 Ohio App.3d 601, where we held that a hayloft's open ledge was an open-and-obvious danger as a matter of law, the trial court found defendants owed no *Page 4 
duty to protect or to warn plaintiff of the open-and-obvious nature of the ledge. The court therefore concluded plaintiff failed to prove the first element of an actionable claim of negligence. Plaintiff appeals assigning three errors:
 ASSIGNMENT OF ERROR NO. 1
 THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THE EVIDENCE OF FOUR SEASONS' FAILURE TO EXERCISE ORDINARY CARE IN DISCHARGING THE DUTY IT VOLUNTARILY UNDERTOOK TO PROTECT ITS PATRONS FROM INJURIES FROM FALLING FROM THE SECOND DECK OF ITS DRIVING RANGE CREATED AN ISSUE OF FACT.
 ASSIGNMENT OF ERROR NO. 2
 THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THERE WAS SUBSTANTIAL EVIDENCE THAT FOUR SEASONS BREACHED ITS DUTY TO UNDERTAKE REASONABLE PRECAUTIONS TO REDUCE THE RISK TO FREIBURGER OF A FALL.
 ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRED WHEN IT FOUND THAT ATTENDANT CIRCUMSTANCES DID NOT CREATE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE DANGER IN THIS CASE WAS OPEN AND OBVIOUS.
 {¶ 7} Plaintiff's three assignments of error contend the trial court erred in granting summary judgment to defendants because genuine issues of material fact remain that either usurp or preclude the application of the open-and-obvious doctrine. An appellate court's review of summary judgment is conducted a de novo. Koos v. Cent. Ohio Cellular, Inc.
(1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. We apply the same standard as the trial court and conduct an independent review without deference to the trial court's determination. Maust v. Bank *Page 5 One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown, at 711. We must affirm the trial court's judgment if any of the grounds the movant raised in the trial court support the judgment. Coventry Twp. v.Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 8} Summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66. A party seeking summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292.
 {¶ 9} "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." Strother v. Hutchinson (1981),67 Ohio St.2d 282, 285. The parties agree that plaintiff was a business invitee when he fell from the second-story ledge of Four Seasons' indoor driving range. A business owner owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden danger so as not to unnecessarily and unreasonably expose its invitees to danger. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203; Perry v. Eastgreen Realty Co. (1978), 53 Ohio St.2d 51, 52. A business owner, however, is not an insurer of a customer's safety. Id. *Page 6 
 {¶ 10} The open-and-obvious doctrine eliminates a premises owner's duty to warn a business invitee of dangers on the premises if the dangers are known to the invitee or are so obvious and apparent to the invitee that he or she may reasonably be expected to discover them and protect against them. Simmons v. American Pacific Ent., LLC,164 Ohio App.3d 763, 2005-Ohio-6957, ¶ 21, citing Sidle v. Humphrey (1968),13 Ohio St.2d 45. The rationale is that the open-and-obvious nature of the hazard serves as a warning so that business owners may reasonably expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. Simmers v. Bentley Constr Co. (1992),64 Ohio St.3d 642, 644.
 {¶ 11} Although this court has reached differing conclusions about whether the open-and-obvious nature of a hazard is a question of law for the court or a question of fact for the jury, this court uniformly recognizes that the existence and obviousness of an alleged danger requires a review of the underlying facts. Schmitt v. Duke Realty, Franklin App. No. 04AP-251, 2005-Ohio-4245, ¶ 10; Terakedis v. The LinFamily Ltd. Partnership, Franklin App. No. 04AP-1172, 2005-Ohio-3985, ¶ 10. If the record reveals no genuine issue of material fact as to whether the danger was free from obstruction and readily appreciated by an ordinary person, this court has found it appropriate to decide the hazard is open and obvious as a matter of law. Id. at ¶ 11-15. If, however, reasonable minds could differ about whether the danger was free from obstruction and readily appreciated by an ordinary person, we have determined the jury appropriately should resolve the factual issue before the court determines whether the landowner has a duty to the business invitee. Schmitt, ¶ 17-19. In sum, our determination of whether the open-and-obvious nature of a hazard is a question of law for the court or question of fact for the jury *Page 7 
will depend largely on the facts of each particular case. See Boles v.Montgomery Ward Co. (1950), 153 Ohio St. 381, 384.
I. First Assignment of Error {¶ 12} Plaintiff's first assignment of error contends the trial court erred in granting summary judgment to defendants because, even if the open-and-obvious doctrine eliminated defendants' duty to warn plaintiff of the danger inherent in a second-story ledge, Four Seasons nevertheless voluntarily assumed a separate duty by providing a safety net to catch those who may fall from that ledge. Pursuant to the voluntary-duty doctrine, plaintiff asserts that a genuine issue of material fact exists whether Four Seasons breached its duty to reasonably maintain the safety net that failed to prevent plaintiff from falling to the ground.
 {¶ 13} Four Seasons responds that the voluntary-duty doctrine does not apply because Four Seasons did not assure plaintiff that the safety net would catch him and plaintiff did not reasonably rely on any such assurance. Four Seasons maintains that, in the absence of a separately imposed duty under the voluntary-duty doctrine, the lack of evidence contesting the open-and-obvious danger present in the second-story ledge absolves it as a matter of law from any duty to warn or protect plaintiff from falling off the ledge.
 {¶ 14} When one voluntarily undertakes a duty to protect another, and the other reasonably relies on that undertaking, the volunteer is required to exercise ordinary care in performing the duty. Restatement of the Law 2d, Torts (1965), Section 323. Although the Supreme Court of Ohio never has expressly adopted the restatement, the court has cited it with approval. See Sawicki v. Village of Ottawa Hills (1988),37 Ohio St.3d 222, *Page 8 
227; Seley v. Searle Co. (1981), 67 Ohio St.2d 192, 202; Briere v.Lathrop (1970), 22 Ohio St.2d 166, 172.
 {¶ 15} In Kerr-Morris v. Equitable Real Estate Invest. Mgmt.,Inc. (1999), 136 Ohio App.3d 331, the First District Court of Appeals applied the voluntary duty doctrine to a hotel patron's slip and fall in a hotel shower equipped with worn away non-slip strips. The court recognized that because the risk of slipping in a shower is ordinarily an open-and-obvious danger, a hotel does not owe its patrons a duty to provide safety devices in its showers. The court, however, found that because the hotel placed non-slip strips in the shower, it owed its patrons a duty to reasonably maintain them. The appellate court thus reversed summary judgment in favor of the hotel after finding a genuine issue about whether the hotel reasonably maintained some of the non-slip strips. One judge dissented from the majority's opinion because the evidence failed to demonstrate the hotel patron relied on the presence of the strips.
 {¶ 16} Here, plaintiff fell from a second-story ledge. An open second-story ledge is ordinarily considered an open-and-obvious danger for which a landowner generally is not required to provide safety devices. See Ruoff, supra. Like the hotel placed non-slip strips, however, Four Seasons maintained a safety net to catch someone "[i]n the event [they] should have an accident, heart attack, twist their ankle, in any situation that they should fall forward, lose their balance on their, you know, the end of their swing." (Ashley Depo. 24.) Although Four Seasons did not verbally assure plaintiff the safety net would catch him in the event that he fell, the net's purpose was readily apparent. Plaintiff testified that he saw the safety net and realized it was there to protect people from falling off the second-story ledge. According to plaintiff, he so relied on the net's assurance of safety *Page 9 
that he did not behave any differently on the driving range's second story than he normally would on a driving range's ground floor. Because plaintiff stated he relied on the apparent protection afforded by the safety net, Four Seasons may owe plaintiff a separate duty to reasonably maintain the safety net pursuant to the voluntary-duty doctrine if plaintiff's reliance was reasonable in light of the circumstances.
 {¶ 17} Determining whether plaintiff reasonably relied on the safety net depends on whether an ordinary person would believe the safety net would catch him or her if he or she fell off the golf center's second-story ledge. Such a determination wholly or partly depends on whether an ordinary person would readily see and appreciate the danger that the safety net may not conform to its apparent purpose.
 {¶ 18} Similarly, because the parties agree that the ledge and net were readily observable, the open-and-obvious doctrine, applied to plaintiff's case, reduces to whether the safety net was "obviously hazardous" in nature. See Armstrong v. Best Buy Company, Inc.,99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13. For the net to be "obviously hazardous," ordinary persons must readily appreciate the risk that the safety net would not catch them if they fell off the golf center's second-story ledge. See Terakedis, supra (analyzing appreciation of risk under reasonable person standard).
 {¶ 19} Even though the trial court ordinarily would be correct in finding the golf center's second-story ledge was an open-and-obvious danger as a matter of law, the addition of the safety net in this case alters the "obviously hazardous" element, and with it plaintiff's ability to appreciate the danger, because the safety net may have veiled the palpable danger usually associated with a second-story ledge. SeeRuoff, supra; Prest v. Delta Delta Delta Sorority (1996),115 Ohio App.3d 712. Specifically, the safety net *Page 10 
recasts the potential risk, changing it from a dangerous fall from the second-story ledge onto the ground into a precarious fall onto the safety net. Accordingly, in order to determine whether the hazard plaintiff encountered was open and obvious, this court must examine not whether the ledge presented a danger plaintiff could appreciate, but whether the safety net presented one.
 {¶ 20} As a result, on the particular facts of this case, the issue that settles whether plaintiff reasonably relied on the safety net under the voluntary-duty doctrine also resolves whether the trial court properly concluded the danger plaintiff encountered was open and obvious: whether plaintiff could appreciate the danger.
 {¶ 21} Here, the evidence defendants offered in support of their motion for summary judgment fails to demonstrate as a matter of law that the golf center's safety net presented an obvious hazard. The safety net is a 40-inch-wide, 19-foot-long net made of rope-like cords suspended from the golf center's second-story ledge to a "very heavy, heavy cable steel cable." (Ashley Depo. 25.) Plaintiff testified he saw the netting and realized it was there to protect people from falling off the second-story ledge. A partner to Four Seasons admitted that "from observing [the netting], [he] knew that it was there to provide safety in an emergency where someone might fall off the deck." Id. at 26.
 {¶ 22} Based on the safety net's physical characteristics and uncontroverted testimony on the netting's appearance of safety, this court cannot say that an ordinary golfer at the golf center would readily appreciate that the safety net would not catch him or her from falling to the ground. Accordingly, this court cannot conclude as a matter of law that the safety net was an open-and-obvious danger. On the other hand, given that plaintiff is six feet five inches tall and 200 pounds, and the safety net is only 40 inches *Page 11 
wide, this court cannot conclude that the danger of falling outside the net as plaintiff did was not open and obvious as a matter of law. Rather, the matter of plaintiff's ability to appreciate the danger the safety net posed is one for the trier of fact to resolve.
 {¶ 23} Because a genuine issue of material fact remains whether defendants owed plaintiff a duty under either the voluntary duty or premises liability theories, we sustain plaintiff's first assignment of error, rendering moot his second and third assignments of error. We reverse the summary judgment the trial court granted to defendants and remand this matter for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
KLATT and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1