NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0482n.06

Case No. 21-3989

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 29, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DENISE SNYDER, in her capacity as the Personal Representative of the Estate of Deceased Concetta M. DeSantis, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| WALMART, INC., et al., | ) ) | OPINION |
| Defendants-Appellees. | ) ) | |

Before: DONALD, BUSH, and NALBANDIAN, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. This matter arises out of a dispute between Concetta DeSantis ("DeSantis") and Walmart, Inc., Wal-Mart Stores East L.P., Wal-Mart Real Estate Business Trust, MPG Property Group LLC, and Four Corners Shopping Center, LLC (collectively "Walmart") after DeSantis was struck by a vehicle driven by Jennifer Marthe ("Marthe") while exiting Walmart's premises. Denise Snyder, as Personal Representative of the Estate of DeSantis, filed an action against Walmart alleging claims for premises liability and negligent undertakings, among other things. Walmart moved for summary judgment, which the district court granted. Snyder appealed.

BACKGROUND

On December 28, 2017, Marthe's vehicle struck DeSantis in the crosswalk of the parking lot while exiting Walmart's premises. DeSantis died as a result of the accident.

Snyder filed premises liability and negligent undertaking claims, among other things, against Walmart and several other entities who "owned, operated, occupied, and maintained" the premises. Snyder alleged that Walmart's parking lot lacked critical safety features, such as stop signs, markings, flags, and signs, that Walmart was privy to these unsafe conditions prior to the accident, and that Walmart undertook a separate duty to ensure that the crosswalk served its purpose of keeping DeSantis reasonably safe.

Walmart moved for summary judgment arguing that the open and obvious doctrine serves as a complete bar to DeSantis's claims and that there could be no genuine issue of material fact because "the lack of pedestrian protections in a parking lot is an open and obvious condition as a matter of law." Additionally, Walmart noted that the video evidence of the accident, police photographs, and guidance from the National Highway Traffic Safety Administration, Ohio municipalities, police departments, and AAA warning pedestrians of the dangers of walking in a crosswalk, undisputedly demonstrated that the dangers were open and obvious. Walmart used this evidence to show that superior knowledge of prior incidents does not prevent the open and obvious doctrine from applying to Snyder's claim and that it did not mitigate its showing that DeSantis could have fully appreciated the dangers. Finally, Walmart argued that it did not assume a separate duty to protect its customers by creating a crosswalk because (1) Snyder relies on pre-*Armstrong* cases to support its proposition that assumption of a duty is an exception to the open and obvious doctrine, (2) Snyder did not proffer evidence that the crosswalk made the parking lot more

dangerous, and (3) Snyder did not provide evidence that DeSantis reasonably relied on the crosswalk to ensure total safety.

The district court granted summary judgment in Walmart's favor on all of Snyder's claims. It found that Walmart owed no duty to warn DeSantis because the danger was open and obvious and that Walmart did not assume a duty to protect DeSantis when it installed a crosswalk. Snyder appealed both findings to this Court.

## DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1226 (6th Cir. 2022) (citing *E.E.O.C. v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1093 (6th Cir. 1998)). A district court may grant summary judgment when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). A dispute of material fact is genuine when "a reasonable jury—viewing the evidence in favor of the nonmovant—could decide for the nonmovant." *Id.* (citing *Anderson*, 477 U.S. at 248).

### B. Premises Liability

The parties agree that Ohio substantive law governs this dispute. So "we look to the final decisions of that state's highest court," treating intermediate appellate court precedent as persuasive, and if no state appellate court addresses the dispute, we must consider all other "relevant data." *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (citations omitted). Under Ohio law, a plaintiff may prevail on a negligence claim under a premises liability theory by showing "(1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting

therefrom." *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1090 (Ohio 2003) (citation omitted). When a plaintiff enters the defendant's premises, her status as a business invitee, licensee, social guest, or trespasser, determines the nature of the legal duty owed. *Shump v. First Cont'l-Robinwood Assocs.*, 644 N.E.2d 291, 294 (Ohio 1994). When a landowner opens its premises to persons for a purpose beneficial to the landowner, those persons occupy the status of business invitees. *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996).

Generally, a landowner owes a business invitee a "duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985). A landowner must warn business invitees "of latent or concealed dangers" when "the owner knows or has reason to know of [the] hidden dangers." *Klauss v. Glassman*, 2005-Ohio-1306, 2005 WL 678984, at *2 (Ohio Ct. App. 2005) (citation omitted). Landowners do not have a duty, however, to warn invitees of dangers that are open and obvious. *Witt v. Saybrook Inv. Corp.*, 2008-Ohio-2188, 2008 WL 1973672, at *3 (Ohio Ct. App. 2008) (citing *Sidle v. Humphrey*, 233 N.E.2d 589, 590 (Ohio 1968)). Instead, the open-and-obvious doctrine bars any negligence claim. *Armstrong*, 788 N.E.2d at 1089–90.

Neither party disputes that DeSantis was a business invitee. At issue, however, are (1) whether the absence of stop signs in the parking lot was an open and obvious danger and (2) whether the Restatement (Second) of Torts § 323(a) or (b) created an exception to the open and obvious doctrine under these circumstances.

1.      Open and Obvious Danger

Whether a dangerous condition is open and obvious "goes to the existence of a duty, which is a question of law." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 725 (6th Cir. 2012) (citations omitted); *see also Armstrong*, 788 N.E.2d at 1089.  Rather than focus on the plaintiff's "conduct in encountering" the condition, this inquiry focuses on "the nature of the dangerous condition itself"—"it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff."  *Armstrong*, 788 N.E.2d at 1091.  Thus, where a dangerous condition is open and obvious, "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves."  *Witt*, 2008 WL 1973672, at \*3 (internal quotations and citations omitted).  Ohio courts apply an objective test: whether the alleged hazard is observable by a reasonable person. *Kintner v. ALDI, Inc.*, 494 F. Supp. 2d 811, 815–16 (S.D. Ohio 2007) (collecting Ohio cases).

Snyder contends that Walmart had a duty to install stop signs or other traffic controls in its parking lot to avoid injuries like DeSantis's.  In her view, the absence of a stop sign is a dangerous condition that is not so open and obvious that an ordinary person acting with reasonable care would "readily appreciate" it.  And Snyder argues that DeSantis's case is uniquely situated for a jury because the district court improperly focused on the dangerous object rather than the "*absence of an object* (traffic controls)" when dismissing her claims on summary judgment.  She relies on two Ohio appellate-court decisions—*Hissong v. Miller* and *Szerszen* v. *Summit Chase Condominiums*—to support her argument.

But we are not persuaded that the Ohio Supreme Court would accept Snyder's arguments.  First, she does not point to any caselaw supporting her argument that Walmart had a duty to install

traffic controls. Yet courts applying Ohio law have consistently held that dangerous conditions in parking lots—like darkness, cracks in pavement, cables, and more—are open and obvious conditions, as long as the conditions are not concealed. *See, e.g.*, *Armstrong*, 788 N.E.2d at 1092 (holding that the bracket of a shopping-cart guardrail at the entranceway of the store by the exit doors was an open and obvious condition); *Autry v. Wal-Mart Stores, Inc.*, No. 3:18CV568, 2019 WL 315038, at \*2 (N.D. Ohio Jan. 24, 2019) (holding that a crack in the parking lot is an open and obvious danger); *Ewers v. Lowe's Home Centers, LLC*, No. 1:18-cv-554, 2019 WL 5455532, at \*5 (S.D. Ohio Oct. 24, 2019) (holding that a cable securing a lawnmower was an open and obvious danger).

Snyder also fails to provide evidence to dispute Walmart's video evidence that the absence of stop signs in the parking lot was an open-and-obvious condition. That evidence shows that "as a matter of law," the lack of traffic controls "was visible to all persons" in that part of the parking lot. *Armstrong*, 788 N.E.2d at 1092. And Snyder acknowledges that DeSantis was familiar with the Walmart location and had visited the Walmart multiple times—a key factor that Ohio courts consider when determining whether a dangerous condition is open and obvious. *See, e.g.*, *id.* (noting that the plaintiff "visited the store two or three times before his mishap" to determine if the alleged dangerous condition was open and obvious); *see also Witt*, 2008 WL 1973672, at \*5 (relying on plaintiff's admission that "he had been to this parking lot many times" when granting summary judgment in part because the dangerous condition was open and obvious). The test is not a subjective one, but whether a plaintiff is familiar with the premises is relevant to whether a reasonable person could observe the condition. Thus, the undisputed video evidence, combined with DeSantis's frequent trips to this Walmart parking lot, lead us to conclude that this condition was open and obvious.

There is no merit to Snyder's argument that her case survives summary judgment because it is analogous to *Hissong v. Miller*, 927 N.E.2d 1161 (Ohio Ct. App. 2010). The plaintiff in *Hissong* fell down a flight of stairs after opening a door to a dark room of a building on her first visit. *Id.* at 1163–64. The Ohio court held that a jury should decide whether the plaintiff encountered a hidden or visible danger when she opened the door to the stairs. *Id.* at 1168. In other words, the court held that the open and obviousness of the condition could not be decided as a matter of law. *Id.* Here, Snyder did not argue that any condition was concealed. Rightly so. The dangers posed by a parking lot are a far cry from hidden staircases in dark rooms, so we do not share the *Hissong* court's hesitation in deciding this question as a matter of law.

*Szerszen v. Summit Chase Condominiums*, 2010-Ohio-4518, 2010 WL 3722637 (Ohio Ct. App. 2010) is similarly unhelpful to Snyder's case. There, the plaintiff fell on a puddle of water created when the sink in his condo overflowed. *Id.* at *1. But unlike here, the parties in *Szerszen* disputed whether the puddle of water that "could be seen only by looking 'hard enough'" was "something that was observable by 'ordinary inspection.'" *Id.* at *5. That dispute, the court of appeals determined, was best resolved by a jury. *Id.* at *4. This case is different because the evidence shows that DeSantis (or any reasonable person) could observe the dangers posed by a parking lot. Unlike the transparent puddle of water in *Szerszen*, a jury does not need to assess whether an invitee to Walmart's parking lot could have observed both the general danger of the parking lot and the lack of traffic controls.

Finally, Snyder argued that Walmart's "superior knowledge" of prior incidents prevents the open and obvious doctrine from application here. But many courts applying Ohio's open-and-obvious doctrine in circumstances where the plaintiff fully appreciates the dangerous condition have come to a different conclusion. *See, e.g.*, *LaCourse v. Fleitz*, 503 N.E.2d 159, 160–61 (Ohio

1986) (citation omitted) (holding that a plaintiff's ability to fully appreciate the danger weighs against liability based on superior knowledge by the defendant); *Bittner v. Walmart Stores Eac, Inc.*, No. 3:16-cv-00151, 2017 WL 2633189, at *4 (S.D. Ohio June 19, 2017) (holding that defendants may only be liable "if the danger was one that they should have expected a visitor would not realize" or fully appreciate). Nothing about Walmart's knowledge makes it less likely that a business invitee could observe the open and obvious dangers presented by the parking lot.

Thus, the district court did not err in holding that Walmart owed no duty to DeSantis because the dangerous condition was open and obvious.

2.      Assumption of a Duty under the Restatement (Second) of Torts § 323(a) and (b)

Generally, an Ohio court's analysis would end when it deems a condition open and obvious as a matter of law. But Snyder also argues that under the negligent-undertaking rule of § 323 of the Restatement (Second) of Torts, the open and obvious doctrine does not serve as a bar to her negligence claim because Walmart owed a separate duty—distinct from its common-law duty— to maintain the premises. DeSantis contends that (1) Walmart assumed this separate duty to protect her when it installed a crosswalk at its storefront as a safety feature, (2) Walmart failed to reasonably maintain its safety feature by not installing additional safety measures to ensure the crosswalk achieved its purpose and in its failure, made its premises less safe, and (3) DeSantis reasonably relied on the crosswalk to keep her safe.

Even though the Supreme Court of Ohio has not expressly adopted what DeSantis refers to as the "assumed duty doctrine" under § 323, "the court has cited it with approval." *Albright v. Montgomery Inn, Inc.*, No. C-940747, 1995 WL 481485, at *2 (Ohio Ct. App. Aug. 16, 1995) (citing *Seley v. G.D. Searle & Co.*, 423 N.Ed.2d 831, 839 n.7 (Ohio 1981); *Briere v. Lathrop Co.*, 258 N.E.2d 597, 602 (Ohio 1970)). Under § 323, when a defendant undertakes a duty to protect

an individual on his own volition, and the individual "reasonably relies on that undertaking," that defendant "is required to exercise ordinary care in performing the duty." *Freiburger v. Four Seasons Golf Ctr., L.L.C.*, 2007-Ohio-2871, 2007 WL 1674020, at *4 (June 12, 2007) (citing Restatement (Second) of Torts § 323 (1965)).

Snyder argues that three Ohio appellate-court cases support her position that Walmart voluntarily assumed a separate duty to install additional safety features by placing the crosswalk in the storefront. *See* Appellant's Br., p. 26 (citing *Albright*, 1995 WL 481485; *Kerr-Morris v. Equitable Real Estate Inv. Mgmt., Inc.*, 736 N.E.2d 552 (Ohio Ct. App. 1999); *Freiburger*, 2007 WL 1674020). But those cases are all distinguishable from this one.

In *Albright*, the plaintiffs (a husband and wife) called the defendant before entering the premises to inquire whether the defendant's dining area was equipped with ramps. *Albright*, 1995 WL 481485, at *1. The defendant assured the plaintiffs that ramps were available. *Id.* When the wife arrived in a wheelchair, the defendant failed to inform the plaintiffs about a portable ramp, and the wife fell down a set of steps and sustained several injuries. *Id.* Because of the defendant's alleged assurances, the court held that a jury must decide whether the defendant assumed a separate duty to the plaintiffs under § 323. *Id.* at *2. Unlike *Albright*, Walmart did not make any assurances to DeSantis, nor did Snyder allege that they did. And even if she had, Walmart's crosswalk is not like the assurance given in *Albright*. No reasonable observer would assume that the crosswalk guaranteed that drivers would proceed safely.

In *Kerr-Morris*, the plaintiff fell in a shower where the nonslip strips place by defendant had allegedly worn away. 736 N.E.2d at 333. The plaintiff argued that the defendant voluntarily assumed a duty of care to the plaintiff to not allow the strips to wear away. *Id.* The court noted that the "distinguishing factor" between prior cases that held that the defendant had no duty to

place safety features in hotels and *Kerr-Morris* was that "the hotel had placed nonslip strips in the shower, but had let some of those strips wear away." *Id.* at 334. Snyder's argument varies from that of *Kerr-Morris*. Snyder did not allege that Walmart's crosswalk had fallen into disrepair such that its condition led to her injury; instead, she argues that Walmart had a duty to install additional safety features based on their installation of the crosswalk. *Kerr-Morris*'s holding is limited to the maintenance of the initial safety feature that the defendant installed. In other words, *Kerr-Morris* did not place an additional duty on the defendant to add more safety features; the holding simply required defendants to reasonably maintain a safety feature it originally decides to install.

Finally, in *Freiburger* the defendant placed a safety net outside of a second story ledge to "catch someone '[i]n the event [they] should have an accident, heart attack, twist their ankle, in any situation that they should fall forward, [or] lose their balance[.]'" *Freiburger*, 2007 WL 1674020, at *4 (third and fourth alterations added). Relying on *Kerr-Morris*, the court applied its previous reasoning and held that a defendant that voluntarily installs safety features on its premises must reasonably maintain those safety features. *Id.*

But note the factual prerequisite in *Freiburger*: the second-story ledge was an open-and-obvious danger, and the defendant purported to remedy that danger with a safety net. *Id.* at *5–6. Adding a safety net "may have veiled the palpable danger usually associated with a second-story ledge," so the real question was whether the safety net itself presented an obvious danger. *Id.* at *6. Here, however, the addition of a crosswalk did not remedy the openness or obviousness of the danger associated with the parking lot. If anything, by marking an area designated for pedestrian crossing, Walmart highlighted, rather than obscured, the nature of the risk presented to its business invitees.

Moreover, under Section 323(a), a plaintiff can only meet the assumption of duty exception by showing that the defendant's failure to exercise reasonable care "increase[d] the risk of such harm," and under section 323(b), the plaintiff must suffer that harm based on her "reliance" on the defendant's "undertaking."

Yet Snyder did not provide any proof that Walmart's installation of the crosswalk increased DeSantis's risk of harm, nor did she show that DeSantis "reasonably relied" on the crosswalk to ensure safety. Although DeSantis's experts argue that the design of the crosswalk for customers coming to and leaving the premises is unreasonably dangerous and falls below the industry standard, the argument still does not address whether Walmart's installation of the crosswalk increased the risk of harm to a higher level than it would be if the crosswalk was not installed. Instead, the record shows that the crosswalk was clearly marked, that the stripes were not defective, indistinguishable, or worn away, that the absence of stop signs was obvious, and that pedestrians would appreciate the dangers of walking in the crosswalk due to multiple warnings by highway officials, AAA, Ohio municipalities, and traffic signs. Further, Snyder's argument that DeSantis "reasonably relied" on the crosswalk for safety simply because she was positioned in the crosswalk is speculative and insufficient to withstand summary judgment.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment granting summary judgment in favor of the defendants.