[Cite as *Norris v. Riesbeck Food Markets, Inc.*, 2018-Ohio-54.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JAMES D. NORRIS, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 17 BE 0008 |
| V. | ) | |
| | ) | OPINION |
| RIESBECK FOOD MARKETS, INC. | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas of Belmont County, Ohio Case No. 16 CV 0112

JUDGMENT:     Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellant     Attorney Amy Pigg Shafer
80 Twelfth Street, Suite 407A
Wheeling, WV 26003

For Defendant-Appellee     Attorney Matthew P. Mullen
Attorney Aletha M. Carver
158 North Broadway Street
New Philadelphia, Ohio 44663

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: January 5, 2018

[Cite as *Norris v. Riesbeck Food Markets, Inc.*, 2018-Ohio-54.]

DONOFRIO, J.

{¶1} Plaintiff-appellant, James Norris, appeals from a Belmont County Common Pleas Court judgment granting summary judgment in favor of defendant-appellee, Riesbeck Food Market, on Norris's slip and fall action.

{¶2} This matter stems from Norris's October 20, 2014, visit to Riesbeck's grocery store located in Bridgeport Ohio.

{¶3} According to Norris, he was walking down a center aisle toward the large rear aisle when he came upon an elderly woman at the end of the aisle where the center aisle meets the rear aisle. Norris maneuvered around the woman, turned the corner, and began to enter the rear aisle. As Norris conducted the turn he noticed the floor looked shinny or wet. By the time Norris noticed the shiny floor, he was standing on it. Immediately upon noticing the shiny floor, Norris slipped and his feet came out from under him.

{¶4} Norris claimed the fall came about so fast that he was unable to complete the turn. Norris claimed he landed flat on his back and hit his head on the ground. Once he fell, Norris was dazed, could not stand up, and was in severe pain. Norris got himself up off the ground by using his shopping cart to brace himself and continued to lean on the shopping cart as he made his way to the front of the store. Upon reaching the front of the store, Norris talked to the store manager and the store manager called an ambulance. The ambulance transported Norris to the hospital.

{¶5} Norris filed a complaint against Riesbeck asserting a claim for negligence. Riesbeck filed a motion for summary judgment. The trial court granted Riesbeck's motion for summary judgment. The court found that there was no genuine issue of material fact and the court determined the hazard that caused appellant Norris's fall was open and obvious. The court also found Norris's admission to observing the hazard prior to his fall established that he was aware of the hazard. In addition, the court found Riesbeck's placement of safety cones around the hazard provided sufficient warning.

{¶6} Norris timely filed this appeal on February 8, 2017. He now raises two assignments of error asserting summary judgment was improper.

**{¶7}** An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8 Thus, we apply the same test as the trial court in determining whether summary judgment was proper.

**{¶8}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist., 2015-Ohio-4167, 44, 44 N.E.3d 1011 N.E.3d 1011, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶9}** Norris's first assignment of error states:

THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN THAT GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE HAZARDOUS WET FLOOR AROUND A CORNER AT THE REAR OF THE DEFENDANT'S GROCERY STORE WAS "OPEN AND OBVIOUS."

**{¶10}** Norris argues the wet floor in the rear aisle was not open and obvious and he lacked an opportunity to perceive the hazard prior to encountering it. Norris argues the hazard was around the corner and there was no reasonable expectation that he would encounter a wet floor while entering the rear aisle of the store. Moreover, he asserts, he was already on the wet floor when he notice that it

appeared wet and shiny.

**{¶11}** A negligence claim requires the plaintiff to prove: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996).

**{¶12}** In this case, Norris was Riesbeck's business invitee. "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio University*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986).

**{¶13}** Generally, a premises owner owes a business invitee a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. *Id.*; *Presley v. Norwood*, 36 Ohio St.2d 29, 31, 202 N.E.2d 81 (1973).

**{¶14}** But a business owner does not owe invitees a duty to warn of dangers that are open and obvious. *Armstrong v. Best Buy Co. Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Id.* at the syllabus. That is because the owner may reasonably expect those entering the property to discover the dangers and take appropriate measures to protect themselves. *Simmers v. Bentley* Constr. Co., 64 Ohio St.2d 642, 644, 597 N.E.2d 504 (1992).

**{¶15}** In the present case, the trial court found that the wet floor was objectively open and obvious and that Norris admitted he observed the condition before his fall.

**{¶16}** We are to look objectively at whether a particular danger is open and obvious, without regard to the injured plaintiff. *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, ¶ 10 (2d Dist.). As such, the open-and-obvious test "'properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it.'" *Id.*, quoting *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 13. A plaintiff's failure to look where he is walking is not necessarily dispositive of

whether a danger is open and obvious. *Id.* at 12. But if the plaintiff admits that had he looked down he would have noticed the danger, then the danger is open and obvious. *Id.*

**{¶17}** Riesbeck's store manager, Dennis Kasprowski, averred that on the day in question and before Norris entered the store, an employee had mopped the rear aisle of the store. (Kasprowski Aff. ¶ 7). Per Riesbeck's policy, the employee had placed several orange cones near and around the mopped area. (Kasprowski Aff. ¶ 8).

**{¶18}** In his deposition, Norris stated he was proceeding down a center aisle and had arrived at the back of the store. (Norris Dep. 40-41). As he was getting ready to turn left into the back aisle, he encountered an elderly shopper in his way. (Norris Dep. 41). Consequently, Norris turned to go around the shopper. (Norris Dep. 41-42). As he did so, he slipped and fell. (Norris Dep. 42). He did not see any hazard cones as he went around the other shopper before he fell. (Norris Dep. 45, 47). Norris stated that while he was lying on the floor, he noticed that the floor looked shiny and wet like there was water on the floor. (Norris Dep. 52-53). And while Norris initially stated that he saw the wet floor while he was trying to navigate away from the elderly shopper, he later clarified this answer by stating that by the time he noticed the floor was wet and shiny, he was already walking on it. (Norris Dep. 54, 76).

**{¶19}** In his affidavit, Norris averred that he slipped immediately as he attempted to turn from a center aisle to the back aisle. (Norris Aff. ¶ 5). He further averred that in the center aisle there were no orange cones, wet floor signs, or other warnings of a wet floor hazard in the rear aisle. (Norris Aff. ¶ 6). And Norris averred that he was already in the process of turning into the back aisle when he saw that the floor looked wet or shiny. (Norris Aff. ¶ 11). In other words, he was already on the wet floor before he had an opportunity to perceive that he was going to step onto a wet floor. (Norris Aff. ¶ 12).

**{¶20}** Norris also gave a telephone interview with Riesbeck's insurance

company. In that interview, Norris stated that he saw the cones on the floor and tried to go around them. He also stated, again however, that before he realized anything, his feet slipped out from under him. And he stated he had no idea he had walked in water because the water was clear.

**{¶21}** The main difference between Norris's telephone interview and his other testimony is that in the telephone interview Norris stated that he saw the orange cones before he fell. But this statement does not mandate a finding of summary judgment in favor of Riesbeck. Even though Norris stated he saw the orange cones, he also stated in the interview that his feet went out from under him before he realized anything. Thus, a question of fact still remains as to whether the wet floor hazard was objectively open and obvious to a shopper making a left turn from a center aisle into the rear aisle.

**{¶22}** In a similar case, this court held a wet floor hazard in the middle of a store that caused a woman to slip and fall may not be an open and obvious hazard. The uncertainty regarding the nature of the hazard caused this court to determine summary judgment was improper. *Kraft v. DolGenCorp, Inc.* 7th Dist. No 06 MA 69, 2007-Ohio-4997. *In Kraft*, a woman slipped and fell on a puddle of water in a store. A store manager claimed he saw the puddle before the woman fell and evidence showed the store had placed warning signs at the hazard location. *Id.* at ¶ 36, ¶ 37. However, the woman claimed there were no safety signs notifying her that a hazard existed. *Id.* at ¶ 36. This court reviewed the facts and determined the woman fell on the water hazard right after she turned into an aisle. *Id.* at ¶ 38. This court determined that the fall occurring after a turn showed that the woman may have had insufficient time to perceive the hazard and avoid it. *Id.* at ¶ 38. When determining whether the safety signs were in place around the hazard this court held, "Even if there was no conflicting evidence as to the existence of a warning sign, Dlwgosh's testimony is unclear as to whether the sign was in her line of vision prior to her fall. *Id.* at ¶ 38. The disagreement in the woman's testimony caused this court to determine a genuine issue of material fact existed and the case was unfit for

summary judgment. *Id.*

**{¶23}** In another similar case, the Second District, in reversing summary judgment in favor of the defendant grocery store in a slip-and-fall case, reasoned:

> The record suggests that Kidder encountered the water and slipped immediately upon turning the corner at the end of an aisle. Thus, she had little advance opportunity to perceive the hazard. Cf. *Henry*, supra, at ¶ 14 (recognizing that the existence of a hazard "in a location where customers could be expected to turn or change direction, thereby limiting their opportunity to see the [hazard] and avoid it" is relevant to whether the hazard was open and obvious). We note too that the mopping employee was not in Kidder's line of vision until after she had turned the corner and fallen. Finally, we note that the layer of water was clear, making detection of its presence more difficult.

*Kidder v. Kroger Co.*, 2nd Dist. No. 20405, 2004-Ohio-4261, ¶ 9.

**{¶24}** Norris stated in his affidavit, "I slipped immediately as I attempted to turn from a center store aisle into the wide, rear aisle of the Riesbeck grocery store." (Norris Aff. ¶ 5). Norris went on to aver that In the central aisle, there were no orange cones, wet floor signs, or other warnings of a wet floor hazard in the rear aisle of the store. (Norris Aff. ¶ 6). In addition, Norris stated, he was already turning in the process of turning into the rear aisle of the store when he saw that the floor looked shiny or wet like it had been mopped. (Norris Aff. ¶ 11).

**{¶25}** Riesbeck argues Norris noticing the shiny or wet floor distinguishes the case at bar from *Kraft*. But Norris's testimony is consistent that by the time he noticed the floor appeared wet and shiny, he was already on that part of the floor. Moreover, the facts here are strikingly similar to *Kidder*: Norris encountered the wet floor and slipped immediately upon turning the corner at the end of an aisle; the cones were not in Norris's view until he was making his turn; and the water was clear, making its detection more difficult.

{¶26} Based on the above, summary judgment in this case was improper because genuine issues of material fact exist as to whether the wet floor was open and obvious.

{¶27} Accordingly, Norris's first assignment of error has merit and is sustained.

{¶28} Norris's second assignment of error states:

THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN THAT GENUINE ISSUES OF MATERIAL FACT EXISTS AS TO THE ADEQUACY OF THE DEFENDANT'S [SIC] WARNING AS TO THE HAZARDOUS WET FLOOR AROUND A CORNER AT THE REAR OF DEFENDANT'S GROCERY STORE.

{¶29} Norris argues in this assignment of error that he lacked adequate notice that a hazard existed in the rear aisle of the store. Norris argues no safety cones or warning signs were visible as he traversed the center aisle towards the rear aisle of the store. Norris argues he could not see any safety cones or signs until he encountered the hazard. Norris argues that noticing the safety cones after encountering the hazard does not constitute adequate notice.

{¶30} Riesbeck admitted it was aware of a soda spill in the rear aisle of the store prior to Norris slipping and falling. (Interrogatory 21). Riesbeck's store manager stated in his affidavit that an employee damp mopped the rear aisle prior to Norris's slip and fall. (Kasprowski Aff. ¶ 7). The store manager also stated an employee placed safety cones around the mopped area. (Kasprowski Aff. ¶ 7). Riesbeck argues the placement of the safety cones provided adequate notice to customers.

{¶31} In *Kraft*, this court determined there may remain a question of fact regarding safety signs even when the defendant presents evidence establishing the presence of safety signs. *Kraft v. DolGenCorp, Inc.* 7th Dist. No 06 MA 69, 2007-

Ohio-4997, ¶ 38.  Even if the presence of safety signs is established, it may remain unclear whether the signs were in the view of the plaintiff.  *Id.*  This court justified the burden set forth in *Kraft* by reciting Civ. Rule 56(C), which dictates the court must view all evidence in a light most favorable to the non-moving party.

**{¶32}** Norris claimed in his affidavit and in his deposition that he was unable to view any safety cones as he approached the rear aisle.  (Norris Dep. Tr.  47-48; Norris Aff. ¶ 9).  Construing this evidence in Norris's favor as Civ.R. 56 requires, Norris did not notice the cones until he was already on the wet floor.  Thus, a genuine issue of material fact exists as to whether Riesbeck's warning was adequate.

**{¶33}** Accordingly, Norris's second assignment of error has merit and is sustained.

**{¶34}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion.

DeGenaro, J., Dissent

Robb, P.J., Concurs

APPROVED:

_____
Gene Donofrio, Judge