[Cite as *Reinhart v. Meijer*, 2024-Ohio-3343.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Megin Reinhart, Individually and as
Administratix of the Estate of Lucas
Reinhart

      Appellant

v.

Meijer, et al.

      Appellees

Court of Appeals No.  L-23-1169

Trial Court No.  CI0202201447

**<u>DECISION AND JUDGMENT</u>**

Decided:  August 30, 2024

* * * * *

Bonnie E. Haims and Thomas P. Timmers, for appellant.

Joshua Miklowski and Paul M. Shipp, for appellees.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Megin Reinhart, individually and as administratrix of the estate of Lucas Reinhart, (collectively "Reinhart")[1] from the June 21, 2023 judgment of the Lucas County Court of Common

---

[1]  This case was originally brought by Lucas and Megin.  However, after the appeal was filed, Lucas died and Megin, as administratrix of the estate of Lucas Reinhart, was substituted as plaintiff in place of Lucas.  For simplicity, we refer to the appellant as

Pleas, as amended by an August 3, 2023 judgment entry,[2] which granted summary judgment to appellees, Meijer Stores Limited Partnership and Meijer[3] (hereinafter jointly "Meijer"). For the reasons that follow, we affirm.

## Assignments of Error

1. The Trial Court erred in granting [Meijer's] Motion for Summary Judgment when evidence was presented which clearly demonstrated issues of material fact as to the adequacy of [Meijer's] "warning".

2. The Trial Court erred in granting [Meijer's] Motion for Summary Judgment when evidence was presented which clearly demonstrated issues of material fact as to the adequacy of [Meijer's] warning relative to customers navigating around a corner.

3. The Trial Court erred in denying [Reinhart's] Motion for Summary Judgment by misapplying the test set forth in *Johnson* by allowing a warning defense to a hazard that [Meijer] was responsible for.

---

Reinhart throughout the entire case, even though, until halfway through the appellate process, the plaintiffs, now appellants, were both Reinharts.

[2] The June 21, 2023 judgment was not final and appealable as it did not contain a remedy. We remanded the case back to the trial court, and on August 3, 2023, the trial court amended its previous order to dismiss the Reinharts' claim with prejudice.

[3] We note that Meijer has stated in a footnote that "Meijer" is not a legal entity susceptible to suit, and that Meijer Stores Limited Partnership is the proper defendant. However, that issue is not before us and the parties have continued to refer to "Meijer" as a party.

2.

## Background

**{¶ 2}** On October 15, 2021, Lucas Reinhart was shopping in a Meijer store on Alexis Road in Toledo Ohio. He picked up some creamer from an end cap and then turned a corner to enter an aisle. Prior to making the turn, Lucas noticed a cone ("Cone 1") warning of a wet floor. He preceded to make the turn into the aisle, walking between Cone 1 and a second cone ("Cone 2"), and then he slipped and fell on egg residue, breaking both the fibula and tibula bones in his left leg.

**{¶ 3}** Lucas's fall, and the events preceding it, were captured on the store's video surveillance. The video shows the following relevant chain of events.

**{¶ 4}** At 2:42 p.m.,[4] a Meijer customer dropped an egg in the dairy aisle and then left without cleaning it up. For the next five minutes, five customers walked through the dropped egg. At 2:47 p.m., a Meijer employee, Emily Ennis, while pushing a cart as she collected items for online customer pick-up orders, appeared to notice the egg on the floor. Emily continued on her way and did not make any attempt to clean up the egg. Emily entered the aisle again a few minutes later and again left without addressing the egg on the floor. Afterwards, more customers traversed through the egg, including a customer who "does a 360-degree spin with his cart through the egg." We note that, as a result of her failure to take care of the spill once she was aware of it, Emily received a "written notice," for safety violations, which stated, inter alia,

---

[4] These times are the times shown on the video.

3.

Seeing a spill on the floor and not reacting to it is of seriously [sic] neglect of our 200% accountability. In this case especially it has caused a serious customer incident. Had the mess been called about at this point, cleaned up, or stood by while waiting for help, we would have avoided a costly customer incident.

{¶ 5} At 2:54 p.m. on the video, a customer pointed out the egg and Kalub Sharp, another Meijer employee, got two large yellow cones, which he put around the egg. Kalub then left and returned with a third cone, which he also placed around the egg. Kalub left again at 2:55 p.m.

{¶ 6} At 2:56 p.m., after picking up the creamer from the endcap, Lucas walked around one cone as he turned the corner into the dairy aisle, then walked between Cone 1 and Cone 2. As he was in the area between all three cones, he slipped and fell to the ground. Shortly thereafter, Kalub returned with the cleaning supplies. Lucas was eventually transported by ambulance to the hospital and the egg was cleaned up. After the egg was cleaned up, the cones remained in the general area, although not in the same spots. Numerous people were seen going between the cones.

{¶ 7} On February 14, 2022, Reinhart filed a complaint against Meijer alleging negligence. On January 31, 2023, Meijer filed a summary judgment motion arguing that it met its duty to Lucas by providing adequate warning of the danger. In addition to the video, Meijer relied upon the deposition testimony of Emily, Kalub, and Lucas. In Lucas's deposition, he testified that he noticed one wet floor sign at the corner of the aisle

4.

prior to his fall, and he ***understood that the purpose*** of the wet floor sign was to warn customers of a hazard in the area.

{¶ 8} Reinhart opposed Meijer's motion and filed a cross-motion for summary judgment, supported by the video, the depositions, Meijer's responses to Reinhart's request for admissions, and Emily's write-up. Reinhart maintained that Meijer's warning was inadequate, both because it did not warn customers of a danger ***around the corner***, and because the cones were spaced too far apart. Additionally, Reinhart argued she was entitled to summary judgment because Meijer was responsible for the hazard. Reinhart contended that once Emily became aware of the danger, it could have been cleaned up prior to Lucas's fall, but instead, the "zone of danger" expanded due to people walking through the egg after Emily became aware of it.

{¶ 9} On June 20, 2023, the trial court granted Meijer's motion for summary judgment and denied Reinhart's cross-motion for summary judgment.

{¶ 10} Reinhart appealed.

## Standard of Review

{¶ 11} "We review a summary judgment decision on a de novo basis. Thus, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment." (Citations omitted.). *DeFoe v. Schoen Builders, LLC*, 2019-Ohio-2255, ¶ 24 (6th Dist.).

## Summary Judgment Standard

{¶ 12} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party.

{¶ 13} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  If the moving party meets this initial burden, the nonmoving party must set forth specific facts, by way of proper Civ.R. 56(C) evidence, showing a genuine issue for trial exists.  *Id.* at 293.

## General Premise Liability Law

{¶ 14} Under premise liability law, "the status of a person who enters on land determines the nature and extent of the legal duty owed to him or her." *Caruso v. Erie Shoreline Properties, LLC*, 2018-Ohio-1659, ¶ 8 (6th Dist.), citing *Shump v. First Continental–Robinwood Assocs.*, 71 Ohio St.3d 414, 417 (1994).

{¶ 15} Here, the parties agree that Lucas was an invitee of Meijer.  As such, Meijer had a duty to exercise ordinary care and protect Lucas by maintaining the store in a safe condition.  *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986), citing *Presley v.*

6.

*Norwood*, 36 Ohio St.2d 29 (1973). This duty is an extensive one that includes the duty to warn patrons of dangerous conditions known to, or reasonably ascertainable by, a proprietor, which a patron should not be expected to discover or protect himself or herself against, and is predicated upon the proprietor's superior knowledge of a dangerous condition on the property. *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359 (1979). "Since a warning eliminates the disparity between the proprietor's and patron's knowledge of the dangerous condition, it is usually sufficient to discharge the proprietor of his duty to exercise reasonable care." *Id*.

{¶ 16} "To recover in a slip and fall negligence case against the premises owner, the invitee must establish: (1) that the premises owner through its officers or employees was responsible for the hazard complained of; or (2) that at least one of those persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or (3) that the danger had existed for a length of time sufficient to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care." *DeVault v. St. Charles Mercy Hosp.*, 2006-Ohio-1626, ¶ 14 (6th Dist.), citing *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943).

{¶ 17} Here Meijer concedes that it had notice of the danger and thus, the third prong is inapplicable. Reinhart has presented arguments regarding both the first and second prongs.

7.

**First and Second Assignments of Error**

{¶ 18} Both Reinhart's first and second assignments of error contest the adequacy of the warning under the second prong, and thus we will consider these assignments together.

{¶ 19} In her first assignment of error, Reinhart contends that there is a genuine issue of material fact as to whether Meijer's warning (the three cones) was adequate. She argues that the placement and the amount of the cones were not a sufficient warning. She points to other customers that followed Lucas's path and walked around the endcap and in between the two cones, and maintains that, had the warning been adequate, these other customers would not have walked through the area. She also claims that the trial court did not address the adequacy of the warning in its opinion.

{¶ 20} In her second assignment of error, Reinhart specifically objects to the adequacy of the warning relative to navigating around a corner. She argues that "[w]hile turning a corner, an invitee does not have sufficient time to perceive a hazard" and that although Cone 1 was placed at the end cap, that cone did not warn customers that, when they turned the corner, they would immediately be placed "in the middle of a hazardous condition." (Emphasis deleted.) She contends that the video is misleading as it "gave the Trial Court something that the invitees of Meijer (including Lucas Reinhart) did not have – a bird's eye view of the hazard," and that, unlike the view shown on the video, customers could not see the other two cones around the corner until they had actually rounded the corner.

8.

**{¶ 21}** In support, she has cited to the following cases where questions of fact were found when an individual was navigating around a corner: *Norris v. Riesbeck Food Markets, Inc.*, 2018-Ohio-54 (7th Dist.), *Kraft v. DolGenCorp*, 2007-Ohio-4997 (7th Dist.), *Kinder v. Kroger Co.*, 2004-Ohio-4261 (2d Dist.), and *Henry v. Dollar Gen. Store*, 2003-Ohio-206 (2d Dist.). She also again argues that the use of three cones was not a sufficient warning for the size of the area in which the egg had spread across the floor.

**{¶ 22}** Meijer insists the warning was adequate, and points to Lucas's deposition testimony where he affirms that he saw one cone **before** he fell and that he **understood** its purpose was to let customers know of a hazard in the area. Meijer also argues that the cases relied upon by Reinhart are distinguishable.

**{¶ 23}** Initially, we disagree with Reinhart's contention that the trial court did not consider the adequacy of the warning. The trial court noted Reinhart's arguments discussed above and then agreed with Meijer that it had met its duty to give adequate notice, based upon the fact that one of the cones was located at the corner of the aisle and Lucas admitted to seeing that cone.

**{¶ 24}** After considering the parties' arguments, and reviewing the record, we agree with the trial court that Meijer met its duty to provide adequate notice of the hazard. Although often the adequacy of a warning is a question of fact, summary judgment is appropriate "if reasonable minds can only come to one conclusion regarding the adequacy of the warning." *Liggins v. Giant Eagle McCutcheon & Stelzer*, 2019-Ohio-1250, ¶ 32 (10th Dist.), quoting *Watts v. Taco Bell*, 1997 WL 24880 (10th Dist. Jan.

9.

21, 1997).  When considering the adequacy of a warning, we consider if it is "reasonably calculated to give an invitee knowledge of a dangerous or hazardous condition" and whether it sufficiently conveyed notice of the condition to the invitee.  *Id.*, quoting *Nibert v. K-Mart Corp.*, 1990 WL 67011 (12th Dist. May 21, 1990).

{¶ 25} In this case, reasonable minds can only conclude that the warning given by Meijer was adequate.  Three large cones were placed around the area, including one at the end cap that was visible before a person turned the corner.  The fact that others walked into the area surrounded by the cones does not create a question of fact on this issue.  The cones merely warned of a potential hazard, they did not prohibit people from entering the area.  More importantly, Lucas ***admitted to seeing a cone before he fell*** and ***admitted that he understood its purpose*** was to let customers know of a hazard in the area.

{¶ 26} Moreover, the fact that the spill was around the corner is not relevant in this case as the cone was placed in such a way that a person would notice it before the person turned the corner and encountered the egg residue.  The cases cited by Reinhart are distinguishable and do not require a different result.  In those cases, the issue was whether the hazard was open and obvious, *Norris*, *Kraft*, *Kidder*, and *Henry*, and/or whether a cone was in place and visible to an invitee prior to encountering the hazard. *Norris* and *Kraft*.  There is no dispute here that warning cones were in place and at least one was visible prior to Lucas rounding the corner and falling.

10.

{¶ 27} As we believe there is no genuine issue of material fact as to whether Meijer provided an adequate warning of the potential hazard of the egg, we find Reinhart's first and second assignments of error not well-taken.

**Third Assignment of Error**

{¶ 28} Reinhart also argues that Meijer is responsible under the first prong of the premises liability test as Meijer was responsible for the hazard, which Reinhart contends is the expanded area of the egg residue which occurred after Emily became aware of the egg and did not attempt to clean it up. Reinhart maintains that Meijer admitted to breaching the standard of care as evidenced by Emily's write-up. Reinhart further contends that an adequate warning does not eliminate a premises owner's liability when the owner created the hazard as "the first prong of the test … does not provide for a defense of adequate warning."

{¶ 29} Meijer argues that it is the second prong, not the first, that is applicable to Emily's inaction, and that Reinhart's argument that a premises owner cannot fulfil its duty to an invitee by warning of danger when the danger was caused by the owner would result in strict liability for negligence, which is not the law.

{¶ 30} Assuming for the sake of argument we find the first prong of the test applicable, we find that Meijer's warning was sufficient to relieve Meijer of liability under the first prong as well. We disagree with Reinhart's assertion that an adequate warning is not a defense to liability under the first prong of the test. Reinhart has not provided us with any caselaw to support this claim. Instead, according to the caselaw,

11.

courts have required an invitee to show two things when the owner created a hazard: that the premises owner created the hazardous condition and that the premises owner failed to warn of it or remove it. *See Anaple v. Std. Oil Co.,* 162 Ohio St. 537 (1955) paragraph one of syllabus (Customer seeking to recover damages for personal injuries suffered when slipping on a grease spot on the premises of a gasoline service station of which he was not warned, must prove, inter alia, that the grease spot was a hazard "sufficient to justify a reasonable conclusion that the duty of ordinary care … would require [the] operator to prevent or remove such grease spot or to warn his customers about it" and that the hazard was created by a negligent act of the operator, or that he had or should have had knowledge for a sufficient time to remove it or warn customers about it.) and *Kessler v. Office Max, Inc.*, 2002 WL 378081, *2 (10th Dist. Mar. 12, 2002) (one option for recovery in a premises liability action is if plaintiff proves "that the defendant was responsible for the creation of the hazard which caused the plaintiff's injury, and failed to either remove or warn the plaintiff of that hazard").

{¶ 31} Even if Emily's actions created an expanded hazard by allowing the area of the egg to increase, Meijer nonetheless provided a sufficient warning of the danger. Therefore, we find that the trial court did not err in denying Reinhart's motion for summary judgment.

{¶ 32} Accordingly, we find that there are no genuine issues of material fact, and reasonable minds can only conclude that Meijer fulfilled its duty to Lucas and was not negligent. We therefore affirm the judgment of the Lucas County Court of Common

12.

Pleas. Pursuant to App.R. 24, Reinhart is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.     

_____
JUDGE

Gene A. Zmuda, J.     

Myron C. Duhart, J.     
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.